[No. B007194. Second Dist., Div. Four. Feb. 15, 1985.]

ANTHONY B. VANDERMOST, Plaintiff and Appellant, v.
ALPHA BETA COMPANY et al., Defendants and Respondents.

**COUNSEL**

Curtis L. Gemmil and Jay Oberholtzer for Plaintiff and Appellant.

Brumer, Rubin & Hiles and Robert S. Rubin for Defendants and Respondents.

## OPINION

McCLOSKY, Acting P. J.—Plaintiff Anthony B. Vandermost appeals from the "Order For New Trial and the Final Judgment . . . in favor of Defendants [Alpha Beta Company, doing business as Alphy's Restaurants and Holly Brouwer] and against Plaintiff, following the granting of Defendants' Motion for Judgment Notwithstanding the Verdict in favor of Plaintiff."

## CONTENTIONS

Plaintiff contends on appeal that "(1) the trial court erred, abused its discretion, and prejudiced [him] by granting the judgment notwithstanding the verdict; (2) the order for new trial must be reversed and the jury verdict reinstated because there is no substantial evidence in the record to support the trial court's findings."

## DISCUSSION

█ We first review the propriety of the trial court's granting of the judgment notwithstanding the verdict. █ "[A] motion for judgment notwithstanding the verdict may not be granted unless, indulging in every presumption in favor of the opposing party's evidence, there is no evidence of substantial value to support a verdict in favor of the opposing party." (*Stevens* v. *Roman Catholic Bishop of Fresno* (1975) 49 Cal.App.3d 877, 889 [123 Cal.Rptr. 171].) "The court may not weigh the evidence but must resolve all conflicts in the evidence in favor of the plaintiff and decide, as a matter of law, that plaintiff would not be entitled to a verdict in his favor." (*Rollenhagen* v. *City of Orange* (1981) 116 Cal.App.3d 414, 417 [172 Cal.Rptr. 49].) With these standards in mind, we summarize those facts most favorable to plaintiff.

On the evening of February 16, 1980, at approximately 11:20 p.m., plaintiff arrived at the Alphy's Restaurant located in Bellflower, California with a group of friends consisting of Kevin Larsen, Jeff Janoian, Jeff Phipps and Ben Swanson. During the course of the evening and prior to his arrival at Alphy's, plaintiff drank approximately eight partial cans of beer. He was not, however, feeling the effects of alcohol.

Shortly after the group had been seated they heard a commotion coming from the area where the cash register was located. Plaintiff heard a noise which sounded like a firecracker. Plaintiff left the booth in order to investigate. He observed a man, later identified as Raymond Moreno, at the cash register talking to defendant Brouwer who was working as the cashier. Ben Swanson heard Mr. Moreno say "give me the money or I am going to shoot someone." Mr. Moreno then fired the handgun he was carrying into the ceiling.

In response to Mr. Moreno's demands, Ms. Brouwer closed the register drawer thereby automatically locking it. She made eye contact with plaintiff and fled to the kitchen. Mr. Moreno unsuccessfully attempted to open the register by banging on it with his gun. Plaintiff observed that Mr. Moreno was "pissed off, angry, confused." Plaintiff began to move toward the exit. Mr. Moreno then approached plaintiff and demanded "give me all your money" to which plaintiff responded "I don't have any money." Mr. Moreno retorted, "Oh yeah" and shot plaintiff in the upper arm. Mr. Moreno also shot one Roderick Garrison who entered the restaurant during the course of the robbery. Mr. Moreno said nothing before shooting Mr. Garrison, but after that shooting he stated: "That will prove I'm not fucking around." The entire attempted robbery took no more than two minutes.

Ms. Brouwer testified that she did not recall her employer instructing her as to how to act during the course of a robbery.

As a result of his injuries, plaintiff filed a complaint seeking recovery from defendants for their negligence during the course of the robbery. Defendants answered denying the charging allegations of that complaint.

After the trial, the matter was submitted to the jury which returned a verdict for plaintiff and against both defendants. Thereafter, defendants filed a motion for judgment notwithstanding the verdict and notice of intention to move for new trial. The court granted the judgment notwithstanding the verdict and in the alternative granted the motion for new trial "to be effective only in the event the plaintiff appeals and prevails and the appellate court reverses this Court's decision as to the motion for judgment notwithstanding the verdict." (See Code Civ. Proc., § 629; *Widener* v. *Pacific Gas & Electric Co.* (1977) 75 Cal.App.3d 415, 437-438 [142 Cal.Rptr. 304], cert. den. (1978) 436 U.S. 918 [56 L.Ed.2d 759, 98 S.Ct. 2265], for the proper construction of such an order.)

■ "[T]he determination that a duty of care exists is an essential precondition to liability founded on negligence." (*Hooks* v. *Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 443 [165 Cal.Rptr.

741].) ▮ Accordingly, to determine the propriety of the trial court's ruling on the motion for judgment notwithstanding the verdict we must first determine whether defendants breached a duty they owed to plaintiff.

▮ "The determination of duty is primarily a question of law. [Citation.] It is the court's 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' (Prosser, Law of Torts (4th ed. 1971) pp. 325-326.) ▮ Any number of considerations may justify the imposition of duty in particular circumstances, including the guidance of history, our continually refined concepts of morals and justice, the convenience of the rule, and social judgment as to where the loss should fall. [Citation.] While the question whether one owes a duty to another must be decided on a case-by-case basis, every case is governed by the rule of general application that all persons are required to use ordinary care to prevent others from being injured as the result of their conduct. [Citation.] However, foreseeability of the risk is a primary consideration in establishing the element of duty. [Citation.]" (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; fn. omitted.)

▮ "It is settled law in California that an owner or occupier of land held open for business purposes has a duty to protect visitors from the wrongful acts of third persons which threaten the safety of visitors to the premises when he or she has reasonable cause to anticipate such acts and the probability of resulting injury. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].)" (*Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 137-138 [203 Cal.Rptr. 572]; fn. omitted.)

▮ Alphy's as the occupier of a restaurant held open for business premises therefore owed plaintiff such a duty. Ms. Brouwer, as an employee of Alphy's, who was acting on Alphy's behalf during the subject events, is subject to the same liability as Alphy's. (Rest.2d Torts, § 383.)[1]

Accordingly, we must determine whether defendants' duty to protect plaintiff from the wrongful acts of third parties obligated them to cooperate with Mr. Moreno during the course of the robbery.[2]

---

[1]Restatement Second of Torts section 383 provides: "One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."

[2]The record on appeal reflects that the question of whether Alphy's was negligent by failing to instruct Ms. Brouwer as to how to act during the course of a robbery was neither pled nor presented to the jury. Plaintiff does not contend on appeal that the trial court erred in omitting this theory from the jury's consideration. We shall, therefore, disregard plaintiff's references to this theory in determining the propriety of the trial court's ruling on the judgment notwithstanding the verdict.

In determining the scope of a duty the foreseeability of harm is of primary importance. (*Gomez* v. *Ticor* (1983) 145 Cal.App.3d 622, 628 [193 Cal.Rptr. 600].) The other major factors in determining the existence and scope of a duty are: "[T]he degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)[3]

Plaintiff, in support of his contention that defendants breached a duty in the case at bench, relies primarily upon *Winn* v. *Holmes* (1956) 143 Cal.App.2d 501 [299 P.2d 994] and *Taylor* v. *Centennial Bowl, Inc.*, *supra*, 65 Cal.2d 114.

In *Winn*, the trial court sustained a demurrer to plaintiff's complaint without leave to amend. The facts pleaded were that plaintiff while a patron of defendant's restaurant was threatened by two individuals, who were patrons at the special invitation of defendant. Defendant knew of these threats. Thereafter, the individuals attacked plaintiff and defendant did nothing to protect her. In reversing the trial court, the appellate court reasoned "[a] person who enters a restaurant to eat a quiet meal has the right to assume that the management will use reasonable care to guard him against injury. A restaurant keeper may not sit idly by when he knows that one of his customers is likely to be assaulted by a third person on the premises, and leave it to the customer to extricate himself from danger. In many of the cases the negligence of the proprietor consisted of the failure to warn the customer of danger of which the proprietor had knowledge, which, of course, is not the basis of plaintiff's claim of negligence. Defendant had no knowledge of threatened injury from third persons which was not also possessed by plaintiff. Under the rule we have stated the proprietor's duty arises from his control over the premises and his power to restrain or expel offenders against the peace and safety of the premises." (*Winn* v. *Holmes*, *supra*, 143 Cal.App.2d at p. 505.)

In *Taylor*, plaintiff, while a patron of defendant's bar, twice had verbal sexual advances made to her by a male patron. These advances were made

---

[3]These standards are flexible and should not be applied in a mechanical fashion. (*Weirum* v. *RKO General, Inc.*, *supra*, 15 Cal.3d at p. 46, fn. 4.) In the case at bench, those standards which warrant the most attention are foreseeability, the closeness of the connection between defendants' conduct and plaintiff's injury, the moral blame attached to defendants' conduct and the policy implications of imposing such a duty.

within hearing distance of a bouncer who was in defendant's employ. Shortly before the bar was about to close the bouncer warned plaintiff "don't go outside because that goofball is out there." Plaintiff indicated that she had to leave. While in the parking lot, the "goofball" accosted and injured her. The evidence further showed numerous incidents of prior criminal acts on the premises. Plaintiff sued the owners of the bar for their failure to protect her adequately from a known danger. The trial court granted a motion for directed verdict and the Supreme Court reversed. The court relied primarily on Restatement Second of Torts section 344, which provides: "A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to [¶] (a) discover that such acts are being done or are likely to be done, or [¶] (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

The *Taylor* court concluded that the warning given in that case was insufficient for defendant to discharge its duty to protect plaintiff from a known danger, especially considering the bouncer "could have easily protected her from the danger he apparently anticipated by simply accompanying plaintiff to her car, . . ." (*Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d at p. 124.)

The duty recognized by both the *Taylor* and *Winn* courts fits easily into the foregoing relevant factors for determining the existence and scope of a duty. In both *Taylor* and *Winn,* a potential assailant had focused attention on the plaintiff. In both cases either the occupier of the premises or its employee, knew of this assaultive conduct. Accordingly, it was foreseeable that absent action by the defendant, plaintiff would be injured. Additionally, there was a close connection established between defendant's failure to act and plaintiff's injury. Furthermore, there was no strong policy reason for not imposing a duty to act on the defendants in those settings. Finally, there was only a minimal burden placed on defendants by imposing that duty.

We have neither been cited to, nor has our independent research revealed, any California cases discussing whether an occupier of land held open for business purposes who has no prior knowledge of criminal activities in the area, owes a duty to a patron to comply with a criminal's demands in order to avoid provoking that criminal into injuring a patron.

The vast majority of other jurisdictions to which this issue has been presented have found that the proprietor of a business establishment has no

duty to comply with a criminal's demands in order to avoid potential injuries to a patron. (See Annot., Liability of Storekeeper for Death of or Injury to Customer in Course of Robbery (1976) 72 A.L.R.3d 1269; Annot. Liability of Bank for Injuries Sustained by Customer in Course of Bank Robbery (1973) 51 A.L.R.3d 711; *Boyd* v. *Racine Currency Exchange, Inc.* (1973) 56 Ill.2d 95 [306 N.E.2d 39]; *Adkins* v. *Ashland Supermarkets, Inc.* (Ky.App. 1978) 569 S.W.2d 698; *Bennett* v. *Estate of Baker* (1976) 27 Ariz.App. 596 [557 P.2d 195]; *Noll* v. *Marian* (1943) 347 Pa. 213 [32 A.2d 18], but see *Kelly* v. *Kroger Company* (10th Cir. 1973) 484 F.2d 1362 (interpreting Kansas law); *Genovay* v. *Fox* (1958) 50 N.J.Super. 538 [143 A.2d 229], revd. on other grounds (1959) 29 N.J. 436 [149 A.2d 212].)

■ Viewed in light of the foregoing California duty analysis we also conclude that there is no duty in this setting. ■ First with regard to foreseeability "[w]hile duty is a question of law, foreseeability is a question of fact for the jury." (*Weirum* v. *RKO General, Inc., supra,* 15 Cal.3d at p. 46.) ■ While the evidence of foreseeability in the case at bench is slight, it was sufficient to raise a factual question for the jury to determine. Mr. Swanson testified that Mr. Moreno told Ms. Brouwer that if she did not give him the money he would shoot someone. This was sufficient for the jury to infer that it was reasonably foreseeable to Ms. Brouwer that unless she complied with Mr. Moreno's demands he would shoot a patron. (Cf. *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 58 [192 Cal.Rptr. 857, 665 P.2d 947].)

■ "Foreseeability is not [however] coterminous with duty." (*Cohen* v. *Southland Corp., supra,* 157 Cal.App.3d at p. 138.) ■ When the minimal nature of foreseeability is viewed in relation with the other factors relevant to determine a duty, we conclude that defendants owed plaintiff no duty to comply with Mr. Moreno's demands.

While it is certain that plaintiff suffered an injury, the closeness of the connection between that injury and defendant's conduct is at best tenuous. It was only after plaintiff stated that he was unable to give Mr. Moreno any money that Moreno shot him in the arm. Additionally, there is no "moral blame" attached to defendant's conduct. The sole moral blame in this setting must be directed toward Mr. Moreno.

Finally, with regard to the policy implications of imposing a duty in this setting, we agree with the reasoning of the Illinois Supreme Court expressed in *Boyd* v. *Racine Currency Exchange, Inc., supra,* 306 N.E.2d 39, wherein a robber grabbed a customer of a money exchange and threatened to shoot him unless the teller either gave him money or allowed him to enter her enclosed booth. Upon the teller's refusal to comply with the robber's de-

mands, the robber shot the customer. Certainly, this situation presents a more compelling reason to find a duty to comply with the demands of a criminal then that presented in the case at bench. The *Boyd* court, however, found that no such duty existed, reasoning that: "If a duty is imposed . . . to comply with such a demand the same would only inure to the benefit of the criminal without affording the desired degree of assurance that compliance with the demand will reduce the risk to the invitee. In fact, the consequence of such a holding may well be to encourage the use of hostages for such purposes, thereby generally increasing the risk to invitees upon business premises. If a duty to comply exists, the occupier of the premises would have little choice in determining whether to comply with the criminal demand and surrender the money or to refuse the demand and be held liable in a civil action for damages brought by or on behalf of the hostage. The existence of this dilemma and knowledge of it by those who are disposed to commit such crimes will only grant to them additional leverage to enforce their criminal demands. The only persons who will clearly benefit from the imposition of such a duty are the criminals. In this particular case the result may appear to be harsh and unjust, but, for the protection of future business invitees, we cannot afford to extend the criminal another weapon in his arsenal." (*Id.*, at p. 42.) We agree with that reasoning.

In the case at bench, given the weak evidence of foreseeability, the tenuous connection between defendants' conduct and plaintiff's injury, the lack of any moral blame attached to defendants' conduct and the strong policy reasons for not imposing a duty in this setting, we conclude that defendants did not breach a duty they owed to plaintiff by failing to comply with Mr. Moreno's demands. Accordingly, the trial court did not err in granting defendants' motion for judgment notwithstanding the verdict. We therefore need not, and do not, address the propriety of the trial court's ruling conditionally granting defendants' motion for a new trial.

The judgment is affirmed.

Arguelles, J., and Shumsky, J.,* concurred.

A petition for a rehearing was denied March 8, 1985, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1985.

---

*Assigned by the Chairperson of the Judicial Council.