[No. B006084. Second Dist., Div. Five. June 10, 1986.]

KEITH WARD FORRAND, Plaintiff and Respondent, v.
FOODMAKER, INC., Defendant and Appellant.

**COUNSEL**

Morgan, Wenzel & McNicholas, Timothy B. Bradford, Greines, Martin, Stein & Richland and Alan G. Martin for Defendant and Appellant.

Hurley, Grassini & Wrinkle, Lawrence Grassini and Roland Wrinkle for Plaintiff and Respondent.

**OPINION**

**HASTINGS, J.**—After a jury trial, the negligence of defendant/appellant Foodmaker, Inc., doing business as Jack-in-the-Box (appellant), was found to have been the sole cause of injuries sustained by plaintiff/respondent Keith W. Forrand (respondent). To have reached this verdict, the jury believed the following to be true:

On July 17, 1977, at approximately 6:50 a.m., Glenn Dore (Dore) a 15-year-old runaway, committed an armed robbery against appellant Jack-in-

the-Box restaurant. He knocked on the drive-through window; and when Michelle Laberteaux (Laberteaux), the shift manager, responded, he placed a 3½-foot-long, .22 caliber rifle on the window ledge, pushed it into her stomach and demanded money. She eventually put money in a restaurant bag, and almost simultaneously with this act or shortly thereafter, respondent arrived at the restaurant to buy a cup of coffee, as he had done almost daily for a year. As he entered the restaurant, Thelma Hotstetter (Hotstetter), a waitress, exclaimed, "Stop him!".[1] She did not tell respondent a robbery had just occurred nor that the robber was armed. Respondent, believing the person had failed to pay all or part of his order, returned to his car, drove a block or so away, spotted Dore, turned and stopped his car in such a way as to block Dore's path. Respondent exited his car and confronted Dore, who shot him through the head.[2] Respondent survived and sued Jack-in-the-Box for negligence. The jury returned a verdict against Jack-in-the-Box and awarded respondent $2,879,000. Further facts shall be discussed where necessary to answer the various contentions of the parties.

Appellant made the following unsuccessful motions: two motions for nonsuit, made after opening statement and after close of respondent's case-in-chief; a motion for judgment notwithstanding the verdict; a motion for a new trial. Appellant appeals the denial of each of these motions.

Appellant raises four issues on appeal. They are: (1) as a matter of law, no duty exists which was breached by a cry of "Stop him!" in the aftermath of a robbery; (2) the trial court prejudicially erred and abused its discretion when it admitted evidence of the alleged violation of company guidelines regarding employee conduct during a robbery and excluded testimony that this conduct had nothing to do with the shooting; (3) there is no substantial

---

[1]Respondent testified he arrived at the Jack-in-the-Box just after the robbery was over but before Dore left the premises. He said as he started to walk in the front door he noticed a young man to his left who was "just getting breakfast or something." He saw him holding "a Jack-in-the-Box, you know sack. He had a burger or something." Hotstetter said the robber had left the premises when respondent entered the door.

Respondent was the only person to testify that Hotstetter yelled, "Stop him." Hotstetter denied she said it, and the only other witness on the scene, Laberteaux testified she did not yell, "Stop him," and did not hear Hotstetter or any one else do so.

[2]The testimony concerning the confrontation immediately before the shooting was conflicting. Dore testified he told respondent to stay in the car and leave him alone. In spite of this warning, respondent got out of the car and referring to the gun said, "that I better know how to use that." Dore then backed up and finally shot respondent who kept coming at him. Dore is five feet five inches and the rifle he was carrying was three feet six inches long. Cherrie Katayama, an eyewitness near the scene, corroborated part of Dore's testimony. She testified she could see Dore and respondent talking while respondent was still in the car but did not hear what was said. Respondent then got out of the car and Dore backed up as respondent approached him. She admitted she was poor at estimating time but thought the confrontation lasted five or more minutes. The only other eyewitness testified these events took only seconds. The jury by a nine-to-three vote found respondent free of any contributory negligence.

evidence to support the verdict that appellant's negligence was a legal cause of respondent's injuries; and (4) a new trial on damages is required because of erroneous admission of evidence, attorney misconduct and excessive damages.

Respondent counters that (1) a duty to warn did exist and was breached; (2) the facts give rise to liability under the traditional analysis of duty; (3) the evidence pertaining to appellant's policy regarding employee conduct during a robbery was relevant and properly admitted, and, even if considered error, its exclusion would not have altered the outcome of the trial; (4) substantial evidence does exist as to the issue of causation; and (5) the damages are not excessive and all damages testimony was properly admitted.

The paramount issue to be resolved is whether a duty of care is owed by appellant to respondent. ■ This determination is an essential precondition to liability founded on negligence. (*Vandermost* v. *Alpha Beta Co.* (1985) 164 Cal.App.3d 771, 776 [210 Cal.Rptr. 613].) ■ While duty is a question of law, foreseeability of the risk is a primary consideration in establishing the element of duty. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) Foreseeability is a question of fact unless decisional law has established that there could be no foreseeability of the risk under same or similar fact situations. Appellant argues such decisional law exists here; therefore, the trial court should have made the determination regarding foreseeability as a matter of law and in its favor. In support of this contention, appellant cites *Vandermost* v. *Alpha Beta, supra,* 164 Cal.App.3d 771, and *Young* v. *Desert View Management Co.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848], petn. for hg. by Supreme Court den.).

In *Vandermost, supra,* 164 Cal.App.3d 771, plaintiff was injured when he left his restaurant seat to investigate a commotion near the cash register. He saw a robber and heard him say, "Give me the money, or I am going to shoot someone." The robber fired his gun; the cashier closed the cash register drawer and fled. When the robber failed in his attempt to open the drawer, he confronted plaintiff demanding money. When plaintiff denied having any money, the robber shot him. Plaintiff sued, seeking recovery for the restaurant's negligence during the course of the robbery. Another division of this court held that, though an owner or occupier of land held open for business has a duty to protect visitors from the wrongful acts of third persons, in this situation the *weak evidence of foreseeability,* the tenuous connection between the injury and defendant's conduct, the lack of moral blame attached to defendant's conduct, and the strong public policy

reasons for not imposing a duty compelled the conclusion that no duty of care existed.[3]

In *Young, supra,* 275 Cal.App.2d 294, plaintiff was in defendant's bar when a robber entered the attached coffee shop. Robber laid his gun on the cash register and demanded money. After the cashier gave him the money, the robber grabbed her and started walking toward the hallway. She broke away, ran through the kitchen to the bar and exclaimed, "Help, I've been robbed." Another waitress turned to plaintiff, told him of the robbery, and asked for assistance in getting the license plate number. When plaintiff went out to the parking lot, he saw a man walking. He asked the man if he had seen the robber. The man identified himself as the robber and drew his gun. As plaintiff ran, the robber shot him in the back. The waitress who sought plaintiff's help did not know the robber was armed. Neither she nor any other employee had told plaintiff the robber had a gun. The court refused to impose a duty of care. It commented, "[I]n the excitement and confusion of an armed robbery, neither victim nor spectators can be expected to react as calmly as observers in a chess match." (*Id.* at p. 297.) The court examined what defendant knew or could have known. Here, there was no evidence that the employees knew the robber lurked outside or that defendant could have been aware that the robber would do anything but hurriedly abscond. In addition, the court likened the request by the waitress for assistance in getting the license plate number to a cry for help. It concluded, "'Robbery. Help' offers no apparent springboard . . . for a successful dive into litigation." (*Ibid.*)

When we analyze the case at bench in light of factors cited by both *Vandermost* and *Young,* particularly the minimal nature of foreseeability, we reach a similar conclusion.

We preface this discussion with the reminder that foreseeability is not coterminous with duty. (*Cohen* v. *Southland Corp.* (1984) 157 Cal.App.3d 130, 138 [203 Cal.Rptr. 572].) When it is minimal and the other factors listed in footnote 3, *ante,* are also weak, a determination that no duty exists is required. (*Vandermost, supra,* 164 Cal.App.3d at p. 779.)

Accepting, as we must, that the jury believed Hotstetter said, "Stop him," could she have foreseen that her statement would cause respondent to re-

[3]These factors were part of the following list of considerations suggested in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R. 3d 496]: "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."

enter his car and search or chase Dore for over a block from the premises.[4] We conclude that such foreseeability that might exist is so minimal as to require a negative response. When Hotstetter spoke to respondent she was acting within the time framework of the robbery. That the robbery was just completed or in progress is supported by respondent's testimony that Dore was still at the walkup window when he arrived. At best, Hotstetter's ability to analyze sufficiently the full consequences of her statement was slight, even though she testified she was calm at the time.[5] (*Young, supra,* 275 Cal.App.2d at p. 297.) Respondent strongly urges that appellant had a duty to warn him that Dore was armed. However, as stated above, the jury believed Hotstetter was acting and speaking within the time framework of the robbery. We shall not impose a duty which presupposes rational thought during a time which normally produces the antithesis. (*Ibid.*) Had respondent been shot on the premises trying to stop Dore the cases cited indicate that foreseeability of harm is also weak in such a highly volatile situation. It thus follows that respondent's chase of Dore in his car and away from the premises was of his own doing and clearly an unforeseeable event that should not cast liability on appellant.

Our decision is further strengthened by the existing rule regarding the duty owed by an owner or occupier of land held open for business. He or she has a duty to protect visitors from the wrongful acts of third persons which threaten the safety of visitors to the premises. (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].) However, this "liability may attach only where the possessor of the premises has reasonable cause to anticipate such conduct and the probability of resulting injury, and fails to take affirmative steps to control the wrongful conduct. [Citations.]" (*Nevarez* v. *Thriftimart, Inc.* (1970) 7 Cal.App.3d 799, 804-805 [87 Cal.Rptr. 50]; see 62 Am.Jur.2d, Premises Liability, Foreseeability of Harm or Risk, § 27, p. 258.)

Respondent urges us to extend this rule to injuries which result from wrongful acts occurring off the premises. Such a ruling would be at odds with the proviso that liability attaches only where the possessor has reasonable cause to foresee the wrongful conduct and fails to act appropriately. (*Nevarez, supra.*) We are hard put to conclude that appellant could foresee Dore shooting respondent almost a block and a half away. (See *Young, supra,* 275 Cal.App.2d at p. 299.)

---

[4]Hotstetter testified that when she saw respondent get out of his car, she said, "Hey you, I cannot serve you because we have been robbed, and I have got to get this locked up."

[5]Hotstetter testified she was calm when she spoke. Respondent relies heavily on this testimony. It must be remembered, however, that his statement would be consistent with her testimony that she did not yell, "Stop him," and that Dore had left the premises when she spoke to respondent. This testimony was rejected by the jury.

Similarly, the connection between Hotstetter's act and respondent's injury is tenuous. This connection is strengthened in direct proportion to the degree of reasonableness of the injured person's actions done in response to the alleged tortfeasor's deed. Here, we cannot say a reasonable person would have gone quite to the extent respondent did. Not only did respondent leave the restaurant, enter his car and search the area looking for Dore, but after finding him, he left the car and approached Dore who was holding a three-and-one-half foot rifle. There was no evidence of a special relationship between Hotstetter and respondent or appellant and respondent requiring or justifying such behavior on his part.[6]

When we measure the amount of moral blame attached to Hotstetter's act, we determine it too is minimal. Clearly, her statement, "Stop him", was an attempt to thwart the success of a crime. Public policy considerations compel that we not attach any moral blame to such attempts. (*Vandermost, supra,* at pp. 778-779, and the cases cited therein; see also, Annot., Liability of Storekeeper for Death or Injury to Customer in Course of Robbery (1976) 72 A.L.R.3d 1269.) As noted in *Bennett* v. *Estate of Baker* (1976) 27 Ariz.App. 596 [557 P.2d 195, 198], the criminal would be the sole beneficiary of a rule requiring a victim to acquiesce to a robber's demands and not act to thwart the crime. Moreover, we find Hotstetter's "Stop him" tantamount to a victim's cry for help. Public policy will not allow such a cry to become a "springboard . . . for a successful dive into litigation." (*Young,* 275 Cal.App.2d at p. 297.)

Because we find no duty to have existed between appellant and respondent, we resolve that no viable cause of action based on negligence can lie. We need not address the other issues raised on appeal.

The judgment is reversed.

Feinerman, P. J., and Ashby, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 20, 1986. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[6]Hotstetter had testified she served respondent almost daily. Respondent testified he did not recognize Hotstetter as anyone special. This type of acquaintance does not rise to the requisite level of special relationship under which our common law would impose a duty to act.