[No. A091760. First Dist., Div. Four. May 10, 2001.]

JAMAL HASSOON, Plaintiff and Appellant, v.
JAMAL SHAMIEH et al., Defendants and Respondents.

## COUNSEL

Gregory M. Haynes for Plaintiff and Appellant.

Law Offices of Mark R. Mittelman and Mark R. Mittelman for Defendants and Respondents.

## OPINION

**SEPULVEDA, J.**—On the evening of January 31, 1997, plaintiff Jamal Hassoon was wounded when he was hit by a round fired from a semiautomatic weapon by a passerby. The shooting occurred as Hassoon stood in Daldas Grocery, defendants' grocery store on Eddy Street in the Tenderloin district of San Francisco. Plaintiff filed this suit for personal injury damages against the store's owners and one of their employees, alleging defendants had breached a duty of care to protect him from violent acts by third parties while he was present on their premises. Following a period of discovery, defendants moved the trial court for an order granting them summary judgment on the ground that, because the shooting was not reasonably foreseeable, they owed plaintiff no duty of care that could be breached to support liability in tort. After the trial court granted the motion, plaintiff timely filed this appeal. We affirm.

### BACKGROUND

Plaintiff argues the evidence before the trial court on defendants' motion for summary judgment showed the following. Plaintiff went to defendants' store on the evening of January 31 to buy groceries. He had bought food there several times before and knew the store's employees, one of whom, defendant Natour, was working behind the counter at the time of plaintiff's visit. While plaintiff was inside the grocery, he and Natour observed as many as 10 men on the sidewalk outside the store beating another man. Natour, according to the complaint, knew the victim of the attack as someone who, in the past, had sold expensive personal items to Natour and other store employees at greatly reduced prices. All the men involved in the fight, including the victim, sold drugs on the sidewalk near the grocery, the complaint alleged. Seeing the victim being beaten, defendant Natour left the store, approached the group, and pulled the victim into the store, rescuing him. The victim asked Natour if he could borrow Natour's pistol. Natour declined to give him his gun but assured the beating victim he would be safe if he remained in the store. When other members of the group of men who had beaten the victim attempted to enter the store, armed store employees warned them not to. Stopping at the door, the men warned the beating victim they were going to shoot him.

At this point, plaintiff told Natour the victim should not remain in the store because the men outside were going to shoot him, and others in the store might be harmed. Unable to go outside, plaintiff telephoned the police. Before the police arrived, however, several shots were fired by someone sitting in a car in the street next to the grocery. Bullets passed through the front door, wounding plaintiff and two other customers within. Asked in his deposition whether "you had time to do anything to avoid being injured?" plaintiff replied, "No." Q. "Do you think there was time for anybody to stop that shooting?" A. "No way." Q. "Too fast, right?" A. "Very fast, yes." [¶] . . . [¶] Did you do anything to try to get out of the way from that shooter?" A. "I couldn't. I didn't have time to breathe." Q. "To breathe?" A. "Yeah." Q. "Just too fast?" A. "Yeah." Q. "Did you try to duck down?" [¶] . . . [¶] A. "I couldn't."

In a declaration filed in support of the motion for summary judgment, defendant Shamieh stated that "Since my ownership of Daldas Grocery, it has never been robbed nor has there ever been any shooting or violent assault on the premises. [¶] . . . [¶] As part of my business practices, a videotape recorder is in operation at the store. Said videotape recorder was in operation [on] 1/31/97. The occurrences of 1/31/97 were videotaped. Said videotape was given to the police." In opposition to the motion for summary judgment, plaintiff filed his own declaration, summarized above. He concluded with this assertion: "Had defendant Natour not brought the [beating victim] into the store, I would not have been shot. Had he remained outside, the co-combatant who appeared to be one of the people who sold drugs on the sidewalk, would have been rescued by the drug dealers who were friendly to him, as his friends did come to his aid[] in the store. [¶] If the violence escalated on the sidewalk, the combatants would have been shooting each other in the street, as opposed to shooting into a store with innocent customers."

## ANALYSIS

■ As explained below, the judgment of the trial court must be affirmed for three independent reasons. ■ In the context of tort law, "[t]he existence of a duty is a question of law for the court." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*); *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819 [59 Cal.Rptr.2d 756, 927 P.2d 1260] (*Kentucky Fried Chicken*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624].) On appeal from a summary judgment granted the defendant premises owner, we determine de novo the existence and scope of any duty owed. (*Ann M., supra,* 6 Cal.4th at pp. 673-674.) In

assessing the threshold issue of duty, "as in other areas of tort law, foreseeability is a crucial factor . . . ." (*Id.* at p. 676.) "Foreseeability, when analyzed to determine the existence or scope of a duty, is a question of law to be decided by the court." (*Id.* at p. 678.)[1]

### A. *Absence of proof of prior similar incidents on defendants' premises.*

■■■■ First, the short answer to plaintiff's contention that defendants are liable to him in tort for the gunshot wound he sustained at the grocery that night is that the absence of proof of prior similar incidents at defendants' place of business is fatal to a successful damages claim in tort. Plaintiff's failure to point to a material factual dispute regarding prior similar incidents of violence at defendants' grocery means the shooting was not foreseeable. From that premise, it follows defendants were under no duty of care running to the victim to take measures to protect him against such an event, and thus had no liability to plaintiff in tort. Together, the opinions in *Ann M., supra,* 6 Cal.4th 666, and *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*) lead us to conclude that in the absence of evidence of prior similar incidents (violent crime at defendants' grocery store), defendants cannot be said to have been under a legal duty to take measures to protect plaintiff against the contingency that he might foreseeably be injured as a result of physical violence while visiting defendants' property. For reasons of legal policy, in California, the duty to take security measures for the protection of visitors is not coextensive with the foreseeability of potential harm. That proposition lies at the heart of the rulings in both *Ann M., supra,* 6 Cal.4th 666, and *Sharon P., supra,* 21 Cal.4th 1181.

In the specific circumstances presented by this case—the foreseeability required to warrant raising a duty on the premises owner to take protective measures against *third party violence*—the California Supreme Court has imposed a requirement of *heightened* foreseeability, a requirement that goes beyond the general foreseeability of the risk of harm to visitors imposed on any owner of real property. The reason for that enhanced requirement of foreseeability, according to the opinion in *Ann M., supra,* 6 Cal.4th 666, is that "random, violent crime is endemic in today's society. It is difficult, if not impossible, to envision any locale open to the public where the occurrence of violent crime seems improbable." (*Id.* at p. 678; see also *Sharon P.,*

---

[1]Plaintiff also contends it was error for the trial court to vacate the default of one of the defendants, Natour, on the ground that it lacked jurisdiction to do so. We disagree. Consideration of this issue and its resolution are matters lying within the broad discretion of the trial court. We find no abuse here, where defendant Natour sought relief from default within a month after being served with process. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911] ["test of abuse of discretion is whether . . . the trial court exceeded the bounds of reason, all of the circumstances . . . being considered"].)

*supra*, 21 Cal.4th at p. 1194 ["one can easily think of a host of locations and businesses that, for one reason or another, present attractive opportunities to the criminal element of society"].)

As we read these controlling precedents, the requirement of "prior similar incidents" is *more* than a factual precondition to premises liability; it is the objective event that separates the duty of care imposed by the law on ordinary property owners from the higher duty imposed on that smaller class of owners whose prior experience with physical violence on their premises makes it reasonable for the law to impose upon them a duty to take reasonable security measures, a breach of which resulting in injury is answerable in damages. As an element of the threshold legal duty analysis, foreseeability is a component of "duty," that " 'expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (*Dillon v. Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], quoting Prosser, Law of Torts (3d ed. 1964) pp. 332-222; see also *Ballard v. Uribe, supra,* 41 Cal.3d 564, 572, fn. 6 ["As this court has explained, 'duty' is not an immutable fact of nature . . . ."].)[2]

### B. *Absence of a duty to prevent events occurring off the premises.*

Second, a string of cases from the Court of Appeal indicates that a landowner has no legal duty to take measures to prevent foreseeable violence occurring *off* of his property. The analysis in *Medina v. Hillshore Partners* (1995) 40 Cal.App.4th 477 [46 Cal.Rptr.2d 871] is instructive. There, the plaintiff's decedent was shot and killed by gang members who congregated around the defendant's apartment building, chased the decedent down the block as he walked past, and murdered him. (*Id.* at p. 480.) The defendant building owner was sued in tort on the theory that, knowing gang members congregated around the premises and posed a threat, it was under a duty to evict them or take other security measures. The Court of Appeal disagreed. " '[P]remises liability is limited to the premises,' " it wrote. California courts, the court continued, " 'have refused to extend premises liability

---

[2]Thus, in premises liability cases presenting issues of third party criminal conduct, duty is not coextensive with foreseeability. The notion that duty and foreseeability *are* coextensive goes back at least to Judge Cardozo's famous statement in the *Palsgraf* case that the "risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf v. Long Island R. Co.* (1928) 248 N.Y. 339 [162 N.E. 99, 100, 59 A.L.R. 1253]) or, stated differently, the foreseeability of the risk is the measure of the duty imposed on the property owner. For policy reasons identified by the court in *Ann M., supra,* 6 Cal.4th 666 and, *Sharon P., supra,* 21 Cal.4th 1181, the third party premises liability cases refute that proposition. Because one might foresee the possibility of a violent criminal act "anywhere," duty (and tort liability) requires more than mere foreseeability; it requires a "heightened foreseeability" embodied in the "prior similars" rule.

principles, so as to make a property owner liable for a third party's tortious conduct occurring off the premises . . . . [¶] The imposition of vicarious liability is particularly disapproved in cases where a landowner is claimed to be liable for the criminal acts of third parties.' " (*Id.* at p. 482, quoting *Martinez v. Pacific Bell* (1990) 225 Cal.App.3d 1557, 1561 [275 Cal.Rptr. 878] [sustaining demurrer to damages claim against telephone company for failing to remove public telephone booth, presence of which attracted criminal element who injured nearby garage owner]; see also *Balard v. Bassment Event Security, Inc.* (1989) 210 Cal.App.3d 243 [258 Cal.Rptr. 343] [no duty owed restaurant patron kidnapped and assaulted outside premises]; *Thai v. Stang* (1989) 214 Cal.App.3d 1264, 1273 [263 Cal.Rptr. 202] [plaintiff wounded in drive-by shooting while standing outside roller rink; *held*: plaintiff "has not presented any . . . evidence that would have put [defendant] on notice that a daytime drive-by shooting of someone on his business premises was a real possibility, [let] alone a likely event"]; *Gregorian v. National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 949 [220 Cal.Rptr. 302] [no duty on storekeeper to protect plaintiff from a "sudden attack of a ruthless youth gang" outside store]; *Donnell v. California Western School of Law* (1988) 200 Cal.App.3d 715, 719 [246 Cal.Rptr. 199] [no duty on school to protect plaintiff from criminal assault on sidewalk bordering building].) We acknowledge, of course, that the facts of this case are not on all fours with the precedents cited above, because here, while the shots were fired from the street outside, the harm occurred inside defendants' store. Still, we think the rationale employed by the courts in these cases—the notion that a property owner is not under a duty to take steps to control events occurring off the premises—applies here as well. It follows that defendants cannot be held liable in the present case for the violence that occurred outside their store, that is, the shots fired from the parked car.

C. *Absence of a duty of care under a Rowland v. Christian analysis.*

The third and longer answer to plaintiff's claim for damages is that, analyzed under the criteria set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] (*Rowland*), we see no liability to plaintiff on the part of defendants—and specifically Natour—for saving someone else from injury. Under this heading, plaintiff contends the vice of Natour's conduct that night was his recklessness in going to the aid of the beating victim on the sidewalk outside the grocery, an act that, under plaintiff's theory of liability, led to his injuries. This argument, of course, is somewhat different from the bare assertion that because plaintiff was injured while on defendants' property, they were under a duty of care to protect him. The criteria identified by the California Supreme Court in *Rowland* for determining immunity from liability in tort of a landowner under these

circumstances consists of the following major factors: ". . . the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty . . . with resulting liability for breach, and the availability [and] cost . . . of insurance . . . ." (*Id.* at p. 113.)

▇▇▇ In litigation presenting comparable factual situations, several Court of Appeal opinions, applying a *Rowland* analysis, have concluded there was no liability in tort. In *Forrand v. Foodmaker, Inc.* (1986) 182 Cal.App.3d 196 [227 Cal.Rptr. 74] (*Foodmaker*), the court held that a fast-food restaurant owed no duty of care to a customer who, after being alerted by an employee that an armed robbery was in progress, chased the robber for several blocks, blocked the path of the robber's car, confronted him, and ignored the robber's warning at gunpoint before being shot in the head. A fair reading of the opinion in *Foodmaker, supra*, 182 Cal.App.3d 196, suggests that as troubling to the Court of Appeal as the question of foreseeability was the prospect of imposing a duty of care and consequent tort liability on a restaurant employee who acted under the exigencies of an armed robbery in progress. The court noted, for example, that the waitress who had yelled "Stop him!" to the plaintiff/patron "was acting within the time framework of the robbery" and that her "ability to analyze sufficiently the full consequences of her statement was slight . . . ." (*Id.* at p. 201.) "We shall not," the Court of Appeal concluded, "impose a duty which presupposes rational thought during a time which normally produces the antithesis." (*Ibid.*)

The court in *Foodmaker, supra*, 182 Cal.App.3d 196, relied on the opinion in *Young v. Desert View Management Corp.* (1969) 275 Cal.App.2d 294 [79 Cal.Rptr. 848] (*Young*). In *Young*, a part-time employee of a restaurant/ coffee shop was shot in the back by an armed robber who had fled to the parking lot after holding up the restaurant. There he encountered (and shot) the employee, who had been alerted by a waitress that the robbery was in progress and told to go to the parking lot in an attempt to identify the getaway car. Affirming a judgment of nonsuit, the Court of Appeal wrote that if the waitress "had said only, 'A man just robbed [us]. Help' we probably would have seen no lawsuit filed. The historic outcry, 'Robbery. Help' offers no apparent springboard here for a successful dive into litigation. It is the addition of the invitation to 'get a license number' which appellant seemingly objects to, taking the view that it constituted a request that he go outside where danger knowingly lurked in the form of a robber with a gun. We do not so find it. Certainly, in the excitement and confusion

of an armed robbery, neither victim nor spectators can be expected to react as calmly as observers of a chess match." (275 Cal.App.2d at p. 297.)

We believe the judicial intuition underlying the result in *Foodmaker, supra,* 182 Cal.App.3d 196, and *Young, supra,* 275 Cal.App.2d 294, is sound; that policies rooted in community perceptions of fairness in the distribution of tort liability lead to the conclusion that a duty of care should not be imposed on a store clerk who responds to the exigencies of a beating by going to the aid of the victim. However foolhardy it may appear in retrospect, we believe the community at large would regard Natour's conduct as a wholly understandable reaction to stressful and dangerous circumstances. In light of that perception, we are reluctant in the calm of judicial hindsight to conclude defendant Natour "should have known better," and thus was under a legal obligation to conduct himself as a reasonable person, not confronted with these exigencies, might have done, on pain of possibly being required to respond in damages for the consequences of his reaction.

We see nothing in the description of the incident that morally distinguishes the conduct of one participant from the other, much less that provides a basis for imposing a legal obligation on one to compensate the other for his injuries. Precisely because of the unlikelihood that Natour had the capacity to act as the fictive "reasonable person" would have, it would be unrealistic (and unjust) to hold him to a legal standard of care which, as the court in *Foodmaker, supra,* 182 Cal.App.3d at page 201, noted, "presupposes rational thought during a time which normally produces the antithesis." Both Natour and plaintiff acted in a context that effectively precluded a rational calculation of the probability of harm resulting from the reaction of either. In a case presenting what can be regarded as the background risks that must be borne as part of group living, we think the better rule is to absolve Natour of a duty of care and consequent potential liability for plaintiff's injuries.[3]

---

[3]Our Supreme Court recently has discussed at length a variation on this very theme, reaching a result consistent with the one we reach here. In *Kentucky Fried Chicken, supra,* 14 Cal.4th 814, a customer was injured at a fast-food restaurant after an employee refused to hand over cash to an armed holdup man; angry, the robber shot the plaintiff, who sued the restaurant for damages. (*Id.* at pp. 818-819.) Concluding the defendant restaurant was under no duty to instruct its employees not to resist a holdup and to comply with any demands, our Supreme Court canvassed rulings from high courts throughout the country (*id.* at pp. 823-828) on their reaction to the claim—much like the one plaintiff makes in this case—that "once the robbery was underway, the defendant had a duty to refrain from conduct that might have the effect of inducing or increasing the likelihood of resistance because such activity would create an unreasonable risk of serious injury or death." (*Id.* at p. 826.) Not so, was the high court's answer.

## CONCLUSION

The judgment of the trial court is affirmed.

Reardon, Acting P. J., and Chiantelli, J.,* concurred.

A petition for a rehearing was denied June 8, 2001, and appellant's petition for review by the Supreme Court was denied August 15, 2001. George, C. J., and Werdegar, J., did not participate therein.

---

*Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.