[No. D040365. Fourth Dist., Div. One. Jan. 8, 2003.]

In re CLARISSA H. et al., Minors.
HECTOR R., Petitioner and Respondent, v.
JOHN MARTIN H., Objector and Appellant.

**COUNSEL**

Judith Klein, under appointment by the Court of Appeal, for Objector and Appellant.

Donna B. Kaiser, under appointment by the Court of Appeal, for Petitioner and Respondent.

Robert Wayne Gehring, under appointment by the Court of Appeal, for Minors.

## OPINION

McCONNELL, J.—We hold in this case that under Family Code[1] section 7894 a judgment terminating parental rights may not be reversed on the ground it was taken by default. Rather, an appellate court may review such a judgment only for sufficiency of the evidence or error. (§ 7894, subds. (b) & (c).) ▮▮▮ ▮ ▮ We affirm the judgment terminating the parental rights of John Martin H. (John), the biological father of Clarissa H. and John Michael H., under section 7822, subdivision (a) on the ground of abandonment.[2]

### FACTUAL AND PROCEDURAL BACKGROUND

Clarissa and John Michael are the children of John and B. R., who separated in 1997 and divorced in 1999. After the separation, the children lived with B. R. In 2001 B. R. married Hector R., and in March 2002 he filed a petition for stepparent adoption of the children on the ground of John's abandonment. (*In re the Adoption Petition of Hector R.* (Super. Ct. San Diego County, 2001, No. A48948).)

In April 2002 Hector commenced this companion action by filing a petition under section 7822, subdivision (a) to declare the children free from the custody and control of John. It was alleged in the petition that John failed to provide financial support for the children "for over several years."[3]

The San Diego County Health and Human Services Agency (the Agency) conducted an investigation. In a report, Tina Jako, the protective services

---

[1] Statutory references are to the Family Code unless otherwise specified.

[2] The appellate record contains no document titled "judgment." Rather, the notice of appeal is from the court's June 14, 2002 minute order. In the interests of justice and to avoid delay we exercise our discretion to deem the order an appealable final judgment. (*Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 20-21 [269 Cal.Rptr. 332]; *Avila v. Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 112(d), p. 178.)

[3] Under section 7822, subdivision (a) parental rights may be terminated when a parent leaves a child in the care and custody of the other parent "for one year without any provision for the child's support, or without communication from the parent . . . with the intent on the part of the parent . . . to abandon the child."

worker, recommended that John's parental rights be terminated. Jako explained that in 1999 B. R. filed a child support claim with the district attorney's office. John's wages were garnished, but B. R. received only one check, for $350, in August 1999. In 1997 John gave B. R. a bag of change totaling $3.53. He paid no other child support.

B. R. also reported that John had a drug problem for which he received treatment in 1998.[4] John's visits with the children were sporadic, and his mother usually contacted B. R. to arrange the visits. In 2001 the children did not hear from John for five months. John arranged for only one visit, in December 2001. In October 2001 Clarissa was hospitalized, and B. R. could not locate John, as his whereabouts were unknown. In the two months since John had been served with the petition to terminate his parental rights, he visited the children weekly, as arranged by his mother.

Clarissa, a first grader, told Jako she wanted Hector to adopt her. Clarissa referred to Hector as "daddy" or "papi." She further indicated that it was all right if her father's rights were terminated because, "I only like to visit a little bit, it's not very much fun. I miss my family when I am gone." John Michael, a preschooler, has a speech delay and it was difficult for Jako to converse with him. John Michael was too young to understand the meaning of adoption. He referred to Hector as "papi" and to John as "daddy John John."

John contacted Jako and told her he was opposed to having his parental rights terminated. He claimed he had regular visitation with the children, but he made no claim regarding payment of child support. Jako told John she would interview him after she interviewed the children. She telephoned him numerous times but got no answer. John did not contact Jako again.

John was served with notice the hearing would be June 14, 2002, at 9:00 a.m. He did not appear. B. R. testified that John provided no child support in the preceding 12 months. She testified the children "hardly . . . even saw" John in 2001, and his only visit was in December. He did not visit the children again until he was served with the petition in April 2002.

The court granted the petition. The court found John had not provided financial support for the children for one year, and "despite the visitation with paternal family members, there's been an abandonment of the children by the father."

A few days later, John sent the court a letter asking for a new hearing based on his mistaken belief the hearing was at 1:00 p.m. instead of 9:00

[4]In his appellate brief, John erroneously asserts the Agency's report "stated both parents had a drug problem in the past." The report stated that only John had a drug problem.

a.m. He explained "[m]y children are of the utmost importance to me [and] I do not want to lose my children." He wanted the opportunity "to show that it's in the [children's] best interest to continue to have relations with myself [and] family."

In a June 19, 2002 letter to John, the court responded: "Pursuant to . . . section 7894, subdivision (b), I have no power to set aside, change, or modify the order freeing the children from your custody and control. Your only recourse at this point is to file an appeal. There are strict time limits for filing an appeal. If you choose to pursue this matter, I recommend that you act quickly."

## DISCUSSION

John contends the judgment should be set aside on the ground his nonappearance at the hearing was inadvertent.[5] He suggests that because "California law does not provide [him] with the opportunity to file a motion for relief from default," but does allow an appeal of the judgment, relief from default is available on appeal. Section 7894, subdivision (b) provides that after "making an order and judgment [terminating parental rights], the court has no power to set aside, change, or modify it." For instance, in *In re Issac J.* (1992) 4 Cal.App.4th 525 [6 Cal.Rptr.2d 65], the Court of Appeal held the trial court lacks power to entertain a motion for new trial after a judgment freeing a minor from his parent's custody under Civil Code section 232 (now Fam. Code, § 7822) on the ground of abandonment. The court cited former Civil Code section 238 (now Fam. Code, § 7894). (*In re Issac J., supra,* 4 Cal.App.4th at p. 529, fn. 2; see also Cal. Law Revision Com. com., 29E West's Ann. Fam. Code (1994 ed.) foll. § 7894, p. 290.)

Subdivision (c) of section 7894 allows an appeal of a judgment terminating parental rights. Ordinarily, in civil matters the sufficiency of the evidence cannot be reviewed on appeal of a default judgment. (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 320 [247 Cal.Rptr. 100].) However, "[i]n light of the special characteristics of termination proceedings and the important interests which they are designed to protect, it is appropriate to allow [a parent] whose parental rights were forever terminated, to attack the sufficiency of the evidence even though she [or he] failed to appear at the hearing." (*Ibid.*)

John asserts "the law on when relief from a default judgment should be granted is instructive." John relies on *In re Cristella C.* (1992) 6 Cal.App.4th

---

[5]John states there is no evidence in the record that the Agency notified him of a right to appointed counsel. However, the citation with which he was admittedly served specifically states, "If any parent appears and is unable to afford counsel, the court shall appoint counsel to represent . . . [such] parent." In any event, John does not raise this as an issue on appeal.

1363, 1366-1367 [8 Cal.Rptr.2d 342], which explained in the statement of facts that when the mother appeared late for a hearing under Welfare and Institutions Code section 366.26, the juvenile court set aside a default judgment terminating her parental rights and scheduled a new hearing. The case is not instructive because it neither discusses the default issue nor addresses section 7894, subdivision (b). The other cases John cites are likewise unhelpful because they do not concern the termination of parental rights, but are general civil matters. ■ " 'It is axiomatic that cases are not authority for propositions not considered.' [Citation.]" (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388 [53 Cal.Rptr.2d 81, 916 P.2d 476].)

■ The interpretation of statutes presents questions of law subject to independent review on appeal. (*Board of Retirement v. Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].) ■ "Our primary aim in construing any law is to determine the legislative intent. [Citation.] In doing so we look first to the words of the statute, giving them their usual and ordinary meaning. [Citations.]" (*Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 501 [247 Cal.Rptr. 362, 754 P.2d 708].)

■ Section 7894 cannot reasonably be interpreted to give an appellate court the discretion to reverse a judgment terminating parental rights on the ground it was taken by default, when the juvenile court is precluded from giving relief from default. Whether relief from default is available is a factual matter, and factual matters are assessed in the first instance by the trial court. (*Hassoon v. Shamieh* (2001) 89 Cal.App.4th 1191, 1195, fn. 1 [107 Cal.Rptr.2d 658]; *Brown v. Williams* (2000) 78 Cal.App.4th 182, 186 [92 Cal.Rptr.2d 634].) The appellate court does "not reweigh the evidence or exercise independent judgment, but merely determine[s] if there are sufficient facts to support the findings of the trial court. [Citations.]" (*In re Matthew S., supra,* 201 Cal.App.3d at p. 321.) Because there is no relief from default at the trial court in a termination proceeding, the record on appeal, such as the one here, would not include any evidence related to the default issue.

Moreover, the public policy of expediency and finality is unusually strong in custody and adoption matters, as uncertainty is detrimental to a child's development and well-being. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 868 [245 Cal.Rptr. 1, 750 P.2d 778].) Section 7984, subdivision (b) is presumably based on this policy. If appellate courts were allowed to reverse judgments terminating parental rights on the ground they were taken by default, the period of uncertainty would be prolonged. We cannot attribute such a scheme to the Legislature. If it intended to allow *any* relief from default in termination proceedings, the trial court, not the appellate court, is

the logical forum. We conclude the statute precludes us from considering default issues and contemplates an appeal of the matter only on the merits. (§ 7894, subds. (b) & (c).)

John does not challenge the sufficiency of the evidence, but we note it amply supports the judgment. He faults the juvenile court for not making the abandonment finding by clear and convincing evidence (see *In re Jack H.* (1980) 106 Cal.App.3d 257, 264 [165 Cal.Rptr. 646]), but the minute order expressly states it did so.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Haller, J., concurred.