[No. A102872. First Dist., Div. Five. July 30, 2004.]

IRINA NEUMANN, Plaintiff and Respondent, v.
HECTOR JOSE BARILLAS MELGAR, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

## COUNSEL

Carey & Carey and Kathryn Carey for Defendant and Appellant.

Legal Aid Society of San Mateo County, Lynda M. Burton and M. Stacey Hawver for Plaintiff and Respondent.

## OPINION

**STEVENS, Acting P. J.**—Hector Jose Barillas Melgar (Hector) appeals from the termination of his parental rights under Family Code sections 7822 and 7803, and the denial of his motion for a new trial.[1] He contends: (1) the judgment is void, and a new trial should have been granted, because the trial court failed to consider a report from family court services (§ 7851, subd. (d)), interview the oldest of the minor children (§ 7891), and consider whether to appoint independent counsel for the children (§ 7861); (2) the court erred in deciding that section 7894, subdivision (b), precluded it from granting a new trial; and (3) the court erred in ruling that Hector abandoned his children within the meaning of section 7822.

In the published portion of this opinion, we conclude that the trial court did not comply with its statutory obligations to protect the best interests of the children under sections 7851, 7891, and 7861. In the unpublished portion, we hold that substantial evidence supported the trial court's conclusion that Hector abandoned the children. Accordingly, we will vacate the judgment and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. *FACTS AND PROCEDURAL HISTORY*

Hector and respondent Irina Neumann (Irina) met in Germany in 1986 or 1987 and moved to the United States in 1992. They never married, but are the parents of two children, A. and E., born in August 1992 and April 1995 respectively.

As will be further described *post*, Irina obtained a domestic violence restraining order against Hector in November 1997. He thereupon vacated the family residence, and by the end of 1997 had both visitation rights and child support obligations. Later, while Hector was jailed for violation of the restraining order, Irina and the children moved. After locating them in 2001, Hector sought modification of the visitation order in April 2002. The court referred the parties to family court services (FCS) for an extended evaluation in July 2002. The following month, Irina filed a petition to declare the minors free from Hector's parental custody and control, and to terminate his parental rights, on the ground he abandoned them by failing to provide support or communicate with them for over a year. (See § 7822.) Trial on the petition occurred on November 19, 2002, and December 17, 2002.

---

[1] Unless otherwise indicated, all further section references are to the Family Code.

A. *THE TRIAL*

1. *Irina's Testimony*

Irina testified that Hector acted violently toward her on a number of occasions. While she was pregnant, Hector slapped her on the head with a shoe. Another time, he hit Irina on the head while she held her baby. Hector also regularly threw things at Irina while she was nursing or holding the baby, and many times struck her with a closed fist and threatened to kill her. Several police reports recorded Hector's violent episodes.

In November 1997, Irina obtained a domestic violence temporary restraining order against Hector, and Hector moved out of their Redwood City home. An order entered in December 1997 required Hector to pay $500 per month in child support and granted him visitation rights. A restraining order issued in March 1998 required that he remain at least 100 yards from Irina, the residence, her work, and the children's school, but granted him joint legal custody of the children and visitation rights.

Nevertheless, Hector violated the restraining order on several occasions, breaking into the house in the middle of the night, chasing Irina with his car, cutting the telephone line, and threatening to kill her. He also failed to adhere to the visitation schedule. As a result, Irina and Hector returned to mediation with FCS in July 1998 at Irina's request. They reached an agreement which called for visitation exchanges of the children to take place at the Redwood City visitation center. The FCS document recording the agreement states: "Both parents shall immediately go there [the visitation center] to register." This agreement was apparently not reduced to a court order.

Irina promptly registered with the visitation center in July 1998, and thereafter checked in with the center periodically. She was advised that Hector had not registered. Hector also failed to comply with the visitation schedule.

On October 14, 1998, Hector was arrested at the Redwood City house following an altercation with Irina's boyfriend (and later husband), Garilov. (As described below, Hector was incarcerated for the offense in June 1999, served about three months in county jail and several weeks in immigration custody, and was then released in October 1999.)

After Hector's incarceration commenced, Irina continued to live with the children at the Redwood City residence, with the same telephone number, until the end of summer 1999. At that point she moved to a small house behind a church. In February 2000, she married Garilov and they moved with

the children to Fremont. On February 9, 2000, she apprised the visitation center of her new address. Father Vladimir, at the Russian church she attended, was aware of her whereabouts, and the children were openly enrolled in Fremont public schools. Irina again contacted the visitation center in June 2002, and was told that Hector still had not registered.

According to Irina, she last received a child support payment from Hector in July or October 1998. The children had not received cards, letters, or calls from Hector since July 1998. Hector last visited the children in accord with the visitation schedule in July 1998, although he saw them on occasion thereafter (but no later than October 1998).

### 2. Probation Officer Ojeda's Testimony

Raymond Ojeda was Hector's probation officer with respect to his October 1998 violation of the restraining order and assault on Garilov. In that capacity, Ojeda wrote to the victims (Irina and Garilov) around August 27, 1999, at Irina's Redwood City address, but received no response. He first met Hector in November 1999 after Hector was released from custody. As part of his probation orientation, Ojeda instructed Hector not to contact Irina or Garilov, since there was a "no contact order with the victims in the case."

Ojeda and Hector first discussed Hector's children on December 29, 1999. Ojeda advised his probationer twice to contact his attorney to establish visitation rights, and the second time specifically directed him to have his attorney contact Irina.[2] Hector failed to initiate the proceeding to modify visitation until April 2002.

### 3. Hector's Testimony

Despite the July 1998 agreement, Hector admitted that he never registered with the visitation center or even contacted them.

Hector testified that he last saw the children the day before he was arrested on October 14, 1998. Although released on bail following his arrest, he did not attempt to contact Irina or the children during the pendency of the criminal matter through May 1999 because, in his words, "I was ordered not to do it." Hector conceded he was never actually ordered not to contact the children,[3] but said he did not contact the children "because I was traumatized

---

[2] Objections were sustained precluding Ojeda from testifying as to other statements Hector made on the ground they were hearsay and not evidence of the declarant's state of mind. Although these rulings were incorrect, they are not alleged as error.

[3] The court inquired: "But for the sake of clarification, [Hector], nobody ordered you not to contact your children?" Hector responded: "That's right."

that if I do anything even to see my children it could get me in trouble by she saying that I follow her or do something."

In June 1999, Hector began serving his jail sentence for violating the restraining order (Pen. Code, § 273.6); he remained in custody for 12 weeks. The immigration service then placed Hector in custody for an additional six weeks, ultimately releasing him in October 1999. According to Hector, he did not communicate with his sons while incarcerated because "I didn't want to give any chance to more misunderstanding. Like I send any letter, I could be accused. I didn't want to take a chance like that."

Upon his release in October 1999, Hector learned from a neighbor of Irina's former Redwood City residence that she and the children had moved. The next month, he went to the Department of Motor Vehicles to find out where Irina was living, but was informed that information was confidential. He then requested their address from his insurance company, but was told the information was confidential since he was no longer living with Irina. In the beginning of 2000, Hector inquired of FCS to no avail, and learned he could not initiate a proceeding to visit his children without their address. On a friend's suggestion, he next went to the child support division of the district attorney's office, where he was informed that Irina had closed the case and they could not provide him further information. About a month later, Hector contacted a private investigator to try to locate his children, but he "didn't have the funds to pay him for the amount of money."

Hector claimed he never gave up looking for his children. He asked Ojeda and Lewis Guich (who led his domestic violence classes) what he could do to locate his children.[4] He also asked his fiancee for assistance. In 2000 and 2001, Hector used Internet services to search for them, but the services "couldn't find the kids even in school records [or] on anything like that." In December 2001, he located an investigator on the Internet who was able to discover the address, whereupon he contacted an attorney to begin the process of seeing his children again. Hector's order to show cause was filed in April 2002.

Hector testified he was very sad and frustrated that he could not see his children for so long, he loved them very much, and they loved him a lot. He wanted to be there for his children for "help and support and help them to be successful persons in life."

---

[4] The trial court precluded Hector from testifying *whether* Guich had provided any assistance in this regard, sustaining hearsay objections to questions such as: "And did he try to help you in some way to find your son?" The rulings as to these particular questions, which did not elicit the content of out-of-court statements, were erroneous. Again, however, Hector has not sought relief on this ground.

In response to questioning from the court, Hector conceded he knew that Irina attended a Russian Orthodox church, but never contacted the priest (who was present in the courtroom) to discover her location because he "didn't think that she was there." Hector further claimed he did not look for Irina or his children through the family visitation center, because FCS advised that the earlier visitation agreements had no effect after he went into custody.

Hector acknowledged making no child support payments between October 1998 and October 1999, even though, during that period, he had not yet learned that Irina had moved. By way of excuse, he claimed he lost his job before going into custody in June 1999. He made no child support payments *after* learning where Irina lived in December 2001, because he thought she would move away and he would not find her again.

### 4. *Kimberly Payne's Testimony*

Kimberly Payne had known Hector for about four years and was aware he had been searching for his children. She assisted Hector by looking in school directories in San Mateo County and Santa Clara County and using private investigators on the Internet.

### B. *DECISION AND JUDGMENT*

The trial court found that Hector "failed to provide support and communicate with his two sons for greater than the one-year statutory period." As set forth in section 7822, this created a rebuttable presumption that he intended to abandon the children. Hector failed to rebut the presumption, the court concluded, because he "made no efforts" to support or communicate with them, his "efforts [were] so minimal to be so insignificant to this Court," he "made no attempt to communicate with someone known to [Irina]" and he "made no efforts even to contact the visitation center." Further, the court pointed out, Irina was "believable and credible and given any dispute between her testimony and that of [Hector], the Court adopts her testimony."

Finding without explanation that it was in the best interest of the children, the court by written judgment declared the children free from Hector's custody and control and terminated Hector's parental rights. Judgment was entered on February 24, 2003.

### C. *HECTOR'S MOTION FOR NEW TRIAL OR MODIFICATION*

Hector obtained different trial counsel. On March 11, 2003, his new attorney filed a motion for a new trial or, alternatively, to modify the judgment. Hector asserted the court had (1) erroneously interpreted the term

"abandonment" in section 7822; (2) failed to consider a report of the FCS evaluator, in violation of section 7851, subdivision (d); (3) failed to interview the oldest child, who at the time was age 10, under section 7891; and (4) failed to appoint independent counsel for the children under section 7861.

The hearing on the motion began on April 22, 2003. At that time, the court: (1) found there was no basis for a new trial on the ground of the sufficiency of the evidence; (2) declared that the issue of appointing counsel for the children rested in the court's discretion under section 7861, and Hector waived the issue by not raising it before or during trial; (3) sought briefing on whether Hector also waived section 7891 (interview of child) and section 7851, subdivision (d) (review of evaluator's report), as he did not raise those issues at trial either; and (4) sought further briefing on whether section 7894, subdivision (b), which ostensibly bars modification of a judgment declaring the child free from parental custody and control, prohibited the court from considering the evaluation report and interviewing the child. Irina's counsel indicated she would not object to the matter being reopened for the limited purpose of considering the evaluator's report and interviewing the child, but the court declined to do so.

The hearing reconvened on May 9, 2003, at which time Hector's motion was denied on the ground the requested relief was precluded by section 7894, subdivision (b).

On June 6, 2003, Hector appealed from the judgment.[5]

## II. *DISCUSSION*

As mentioned, Hector contends: the judgment is void and a new trial should have been granted because the court did not consider the evaluator's report, interview the oldest minor child, or appoint counsel for the children; the court erred in concluding that section 7894, subdivision (b), barred it from granting a new trial or modifying the judgment; and the court erred in finding that he abandoned the children. Irina responds that Hector failed to

---

[5] According to the notice of appeal, Hector appealed solely from the judgment. Although an appeal from a judgment does not perfect an appeal from a postjudgment appealable order (*DeZerega v. Meggs* (2000) 83 Cal.App.4th 28, 43 [99 Cal.Rptr.2d 366]; *Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1284 [114 Cal.Rptr.2d 898]), an order *denying* a new trial is not independently appealable but is instead reviewed on appeal from the underlying judgment. (See Code Civ. Proc., § 904.1, subd. (a)(4); *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 37 [90 Cal.Rptr.2d 15].) We construe Hector's notice of appeal liberally to include an appeal from the order denying a new trial. (Cal. Rules of Court, rule 1(a)(2).) In addition, since Hector timely filed a motion for a new trial or modification of the judgment, the deadline for appealing the judgment was extended and the notice of appeal was timely. (Cal. Rules of Court, rule 3(a), (b).)

raise these arguments during the trial, section 7894, subdivision (b), precluded a new trial as a matter of law, and the purported errors do not compel reversal in any event.

To orient the reader, we begin with a brief overview of the relevant statutory scheme. We next consider the procedural issues raised by Irina, and then conclude with an analysis of the trial court's failure to comply with its statutory obligations.

## A. *STATUTORY BACKGROUND*

■ Upon enumerated statutory grounds, an interested party may file a petition for the purpose of having a minor child declared free from the custody and control of either or both parents. (§§ 7802, 7840, 7841.) One basis for declaring a child free from parental custody and control, pursuant to section 7822, is abandonment by the parent: "(a) A proceeding under this part may be brought where the child has been left . . . by one parent in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child. [¶] (b) The . . . failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon. If the parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by the parent or parents."[6] When a child is declared free from parental custody and control, the parent's rights and responsibilities are terminated with respect to the child. (§ 7803.)

■ Statutes authorizing an action to free a child from parental custody and control are intended foremost to protect the child. (*In re Sherman M.* (1974) 39 Cal.App.3d 40, 45 [113 Cal.Rptr. 847].) Typically, such statutes are invoked for the purpose of terminating the rights of one or more biological parent, so the child may be adopted into a stable home environment. (See § 7800 ["The purpose of this part is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life."]; *In re Daniel M.* (1993) 16 Cal.App.4th 878, 883–884 [20 Cal.Rptr.2d 291] (*Daniel M.*).) In any event, the best interests of the child are paramount in interpreting and implementing the statutory scheme. (See *Daniel M., supra,* at pp. 883–884.) Indeed, our Legislature has declared that the statutory scheme "shall be liberally construed to serve and protect the interests and welfare of the child." (§ 7801.) It further directs that the trial court "*shall* consider the wishes of the

---

[6] Section 7822 continued Civil Code section 232 without substantive change. (23 Cal. Law Rev. Comm. Rep. 1 (1993).) Many of the pertinent cases refer to Civil Code section 232.

child, bearing in mind the age of the child, and *shall* act in the best interest of the child." (§ 7890, italics added.)

■ We recognize, as well, that "[t]he relationship of a natural parent to [his] child[] is a vital human relationship," with far-reaching implications for the child's growth and development. (*In re T. M. R.* (1974) 41 Cal.App.3d 694, 703 [116 Cal.Rptr. 292].) We therefore view the involuntary termination of parental rights as a "drastic remedy which should be resorted to only in extreme cases of neglect or abandonment." (*Ibid.*) In light of these weighty concerns, proof of abandonment must be established by clear and convincing evidence. (*In re Heidi T.* (1978) 87 Cal.App.3d 864, 870 [151 Cal.Rptr. 263] (*Heidi T.*).) With these principles in mind, we next turn to the issues presented on appeal.

B. *SUBSTANTIAL EVIDENCE OF ABANDONMENT (§ 7822)*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *POTENTIAL IMPEDIMENTS TO REVIEW OR RELIEF*

Irina maintains that Hector is precluded from now raising the court's failure to consider the evaluator's report, interview the oldest child, and appoint independent legal counsel, because he did not raise these issues during trial. We examine this argument as it relates both to Hector's appeal from the judgment and his appeal from the denial of the new trial motion. We then consider whether, as the trial court concluded, section 7894, subdivision (b), barred a new trial or modification of the judgment.

1. *Waiver with Respect to Appeal from Judgment*

■ During trial, Hector did not offer the evaluator's report into evidence or request its consideration. Nor did he ask the court to interview the oldest child, or request that the court consider appointing independent counsel for the children. And, he did not assert during trial that the court's failure to do these things constituted error. Issues not raised at trial usually will not be considered on appeal. (*In re Aaron B.* (1996) 46 Cal.App.4th 843, 846 [54 Cal.Rptr.2d 27] [father's failure to raise inadequacy of social worker's report in proceeding terminating his parental rights]; *Heidi T., supra,* 87 Cal.App.3d at p. 876 [order terminating parental rights not vacated on grounds that the

---

\*See footnote, *ante*, page 152.

trial court had failed to ascertain the children's express desires and appoint them counsel, where mother had not raised the issues in the trial court].)[9]

■ Hector contends the court's omissions rendered the judgment "void," presumably because a void judgment may be attacked at any time, without regard to principles of waiver or estoppel. A judgment is void, however, only if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. (*In re Andres G.* (1998) 64 Cal.App.4th 476, 482 [75 Cal.Rptr.2d 285].) That was not the case here. Instead, a court's failure to follow proper procedure results in an act in excess of its jurisdiction in a broader sense, such that the judgment remains valid but void*able*, and the parties may be precluded from setting it aside by waiver or estoppel. (*Ibid.*) Whether waiver or estoppel will actually be applied turns largely on the degree of the procedural irregularity and whether the court's act violated a comprehensive statutory scheme or offended public policy. (*Id.* at p. 483.)

■ In the matter before us, the procedural protections ignored by the trial court—the evaluator's report, an interview of the child, and deciding whether to appoint independent counsel—are all calculated to promote the best interests of the affected children. This not only reflects a substantial public interest, it pertains to *the* paramount concern of the entire proceeding. (See §§ 7800, 7801, 7890.) Under these circumstances, we would not apply the principles of waiver or estoppel: *Hector's* failure to remind the court of its statutory obligations to the children should not be permitted to frustrate the Legislature's aim of protecting the children's best interests. Furthermore, we have discretion to review a question of law, even if not raised in the trial court, where the underlying facts are undisputed and the matter is of public importance. We choose to exercise that discretion in light of the important concerns involved, and conclude that Hector is not barred from asserting these matters in his appeal from the judgment.

### 2. *Waiver with Respect to Appeal from Denial of New Trial Motion*

As we have pointed out, Hector appeals not only from the judgment, but also from the denial of his new trial motion. Because his new trial motion *did* raise the issues of the evaluator's report, the interview with the child, and the

---

[9] We note, however, that some of these matters were known to the trial court before entry of judgment. The court clerk's citation, which summoned Hector to the trial, included the notation that the court would determine whether independent counsel should be appointed for the minors. After trial, Hector's counsel objected to the proposed judgment on the ground it stated that the court had considered all the "testimony, reports, etc.," because "the court was under an obligation to have read and considered the evaluation conducted pursuant to Family Code Section 7851." Counsel's letter was provided to the court, along with the proposed judgment. The court was thus advised of the mandate of section 7851, and could have in turn reviewed the report as compelled by the statute, before entry of judgment.

appointment of counsel, Hector did not waive his right to challenge the denial of the new trial motion on these grounds.

### 3. *Jurisdiction to Grant New Trial (§ 7894)*

We next address Irina's argument, and the trial court's ruling, that the court lacked *jurisdiction* to grant the new trial motion or modify the judgment. The court denied Hector's new trial motion on the ground that section 7894, subdivision (b), precluded it from modifying the order and judgment. Hector claims this was error, and we agree.[10]

Section 7894 provides: "(a) An order and judgment of the court declaring a child free from the custody and control of a parent or parents under this part is conclusive and binding upon the child, upon the parent or parents, and upon all other persons who have been served with citations by publication or otherwise as provided in this part. [¶] (b) *After making the order and judgment, the court has no power to set aside, change, or modify it.* [¶] (c) Nothing in this section limits the right to appeal from the order and judgment." (Italics added.)

The judgment declaring the children free from Hector's custody and control was entered on February 24, 2003. If we were to look solely at the language of section 7894, *subdivision (b)*, it would appear that from then on the trial court was without jurisdiction to modify the judgment. However, when we apply fundamental precepts of statutory construction and consider section 7894 as a whole, we discover a logical and reasonable interpretation that countenances the entirety of section 7894, promotes the interests of expediency and finality in child custody matters, and permits trial court correction of errors in instances such as these.

In *Morrow, supra,* 9 Cal.App.3d 39, the appellate court examined whether Civil Code section 238 (predecessor to section 7894) precluded a motion for a new trial, because, if it did, appellant's new trial motion had not extended the deadline for filing the notice of appeal and the appeal was untimely. Ultimately, the court did not decide the issue, concluding the petitioner was estopped from asserting it by failing to raise it earlier. (*Morrow, supra,* at

---

[10] Because Hector's failure to raise the issues at trial does not bar review of the judgment itself, we need not rule on the denial of the new trial motion. We nevertheless consider the effect of section 7894, subdivision (b), for two reasons. First, if section 7894, subdivision (b), precluded Hector's posttrial motion as a matter of law, it might be argued that Hector's posttrial motion was not "valid" on its face, did not extend the time for filing a notice of appeal, and Hector's notice was therefore untimely filed, depriving this court of jurisdiction. (See Cal. Rules of Court, rule 3(a); *In re Morrow* (1970) 9 Cal.App.3d 39, 44 [88 Cal.Rptr. 142] (*Morrow*).) Second, the scope of section 7894 is an important issue likely to recur, perhaps even after remand of this case.

p. 46.) Nevertheless, the court observed: "It is arguable that Civil Code section 238 refers to setting aside, changing or modifying an ordered judgment which has become *final*; that it is *not* intended to prohibit the re-examination which may generally be conducted under section 657 or section 663 of the Code of Civil Procedure before a judgment or order is final; and that the provisions of section 238 were merely inserted out of an abundance of caution to distinguish the continuing jurisdiction over custody which generally marks proceedings for dissolution of marriage." (*Morrow, supra,* at p. 45, italics added.)

We agree with this observation, particularly in light of the balance of section 7894. (See *Daniel M., supra,* 16 Cal.App.4th at p. 882 [statute must be construed in context and with effect to every word or phrase of the statute].) In particular, section 7894, subdivision (*c*), reads: "Nothing in this section limits the right to appeal from the order and judgment." Since the Legislature has deemed it appropriate for the trial court's decision to be appealed within the 60-day appeal period, we see no reason the trial court should not be able to correct any errors on its own, upon motion timely brought within that same period, before the judgment becomes final. We are cognizant, of course, that matters pertaining to the custody of children should be resolved with expediency and finality, and the filing and adjudication of a new trial motion could delay the time for an appeal. (See, e.g., *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 125 [129 Cal.Rptr.2d 223] (*Clarissa H.*).) But it is also true that the opportunity for the trial court to correct errors in response to a timely post-judgment motion could *obviate* the need for an appeal, and thus significantly *reduce* the time before the judgment becomes final.

In addition, there are recognized exceptions to the preclusive language of section 7894, subdivision (b). In *In re Olivia A.* (1986) 181 Cal.App.3d 237 [226 Cal.Rptr. 382] (*Olivia A.*), the mother had successfully petitioned to terminate the father's parental rights, at the father's request, because he could not pay the support payments. In obtaining this judgment, however, the mother had failed to inform the court that she was receiving welfare and had therefore assigned her rights to child support to the county, and had failed as well to notify the county of the proceeding. The trial court vacated the judgment, and the Court of Appeal affirmed, notwithstanding Civil Code section 238 (predecessor to section 7894), on the grounds that: (1) Civil Code section 238 applied only to persons who have been served with a citation to appear at the hearing, and the county was not served; (2) *neither the juvenile probation department nor the county had investigated the minor and the*

*circumstances alleged in the petition*; and (3) the mother had perpetrated a fraud on the court, and the court always retains the power to vacate a judgment obtained through fraud. (*Olivia A., supra,* at p. 242.)[11] *Olivia A.* thus suggests that, at least in combination with other infirmities, the failure to investigate and report on the best interests of the child *can* be addressed postjudgment, notwithstanding section 7894, subdivision (b).

As applied to the present case, the court's failure to consider the evaluator's report left the children in virtually the same position as if the investigation had never occurred or the report had not been prepared. This error, in combination with the other errors Hector alleged in his new trial motion, was appropriate for the trial court's postjudgment consideration. (See also *Adoption of Michael D.* (1989) 209 Cal.App.3d 122, 137 [256 Cal.Rptr. 884] [noting, albeit without a discussion of § 7894, subd. (b), that trial counsel had failed to request a new trial in a proceeding to terminate parental rights].)

*Clarissa H., supra,* 105 Cal.App.4th 120, on which the trial court in this matter relied, is not to the contrary. There, the stepfather filed a petition to declare the children free from the custody and control of their biological father. The biological father failed to appear at the hearing, and the court granted the petition. A few days later, the biological father requested a new hearing, claiming he missed the hearing by mistake. The trial court denied the request, pursuant to section 7894, subdivision (b). The biological father appealed, arguing he could obtain relief from the default in the appellate court, based on the assumption that section 7894, subdivision (b), precluded such relief in the trial court. The Court of Appeal disagreed, concluding that the appellate review permitted by section 7894, subdivision (c), is limited to the merits, and the Court of Appeal should not be able to reverse on the ground of a default under section 7894, subdivision (c), where the trial court is precluded from doing so under section 7894, subdivision (b). (*Clarissa H., supra,* at pp. 125–126.) Consequently, the court in *Clarissa H.* addressed the scope of *appellate* review based on the assumption that section 7894, subdivision (b), barred relief for a *default*. It did not examine the application of section 7894, subdivision (b), where the trial court was called upon to rectify its own critical legal or procedural errors before the judgment became final.

Also distinguishable are the cases underlying the *Clarissa H.* opinion. *Clarissa H.* relied most prominently on *In re Isaac J.* (1992) 4 Cal.App.4th 525 [6 Cal.Rptr.2d 65] (*Isaac J.*). In *Isaac*, the trial court had terminated a father's parental rights. After the father's appeal was dismissed as untimely, he requested

---

[11] Irina omits the second reason from her discussion of *Olivia A.*, even though it bears substantial similarity to the court's failure to consider the evaluator's report.

habeas corpus relief. In dictum, the appellate court stated in a footnote that under section 7894 "[t]he trial court has no power to entertain a motion for new trial after a judgment freeing a minor from his parent's custody . . . ." (*Isaac J., supra,* at p. 529, fn. 2.) For this proposition, the court in *Isaac* cited *In re Manuel J.* (1984) 150 Cal.App.3d 513, 520–521 [197 Cal.Rptr. 777], which held that the trial court had no jurisdiction to consider a motion to set aside a *default* judgment that had been entered approximately *six months* earlier. Neither *Isaac J.* nor *Manuel J.* stands for the proposition that a trial court may not correct its own errors before a judgment terminating parental rights has become final.

■ We hold that section 7894, subdivision (b), does not preclude the trial court from granting a timely new trial motion where, as alleged here, the court has committed several legal errors in violation of statutory provisions designed to protect the best interests of the child. We now turn to the significance of those errors.

## D. *ERRORS AT TRIAL*

The trial court failed to consider the evaluator's report, interview the oldest minor child, and consider whether to appoint independent legal counsel for the children. We address each in turn.

### 1. *Consideration of Evaluator's Report (§ 7851, subd. (d))*

■ When a petition is filed for an order or judgment declaring a child free from the custody and control of either or both parents, the court must notify the appropriate person or agency (as specified in the statute), who shall immediately investigate the child's circumstances and the alleged basis for ordering the child free from parental custody and control. (§ 7850.) This person or agency shall, in turn, render to the court a written report of the investigation with a recommendation of the proper disposition to be made in accordance with the best interest of the child. (§ 7851, subd. (a).) Section 7851, subdivision (d), provides: "The court shall receive the report in evidence and shall read and consider its contents in rendering the court's judgment."

The parties were referred to FCS for an extended evaluation in July 2002. The evaluator's report was filed with the trial court under seal on November 8, 2002, several days before trial commenced. Neither party requested that the report be admitted into evidence or considered by the court. At the hearing on Hector's new trial motion, the court initially believed it had

reviewed the evaluator's report, but noted the record did not reflect such a review, and was willing to defer to the record. The court also recalled the report was outdated, although counsel for both parties agreed it was not. Based upon the foregoing, we conclude the trial court did not review the evaluator's report.

■ A threshold issue is whether section 7851, subdivision (d), required the trial court to consider the contents of the report, even though neither party offered it in evidence or requested it to be considered. Looking at the statutory language, the court's obligation to "receive the report in evidence" seems dependent upon a party first offering it into evidence. It is less clear, however, whether the court's duty to review the report—reflected in the phrase, "*and* shall read and consider its contents" (italics added)—also hinges on a party offering the report into evidence, or is instead an independent sua sponte obligation to guard the interests of the minor children. Because the stated statutory purpose of the report is to inform the court of the best interests of the child, and the interests of the children are fundamental to the proceeding, we conclude that it was the trial court's obligation to read and consider the report sua sponte.[12]

We must therefore consider the gravity of the court's oversight. Hector argues the evaluation report corroborated testimony that he did not know the whereabouts of Irina or the children, was looking for them, and sought help from FCS. He also claims the report supported probation officer Ojeda's testimony that he too was unable to locate the children. Neither of these claims are meritorious. As to Hector, the evaluator's report merely reiterated what Hector *told* the evaluator; it did not confirm the veracity of his statements. This conclusion was probative of whether the termination of Hector's parental rights would be in the best interests of the children, since the termination of these rights would adversely affect the prospects of a relationship and visitation. The failure to consider the evaluator's report was therefore prejudicial error.

### 2. *Interview of Minor (§ 7891)*

■ Section 7890 states: "In a proceeding under this part, the court shall consider the wishes of the child, bearing in mind the age of the child, and shall act in the best interest of the child." To this end, section 7891 requires the court to interview the minor child if he or she is of sufficient age.

---

[12] We do not address the situation where consideration of the report is waived by the minors' own attorney. The children in this matter were not represented by counsel.

 Specifically, section 7891 reads: "(a) Except as otherwise provided in this section, if the child who is the subject of the petition is *10 years of age or older*, the child *shall* be heard by the court in chambers on at least the following matters: [¶] (1) The feelings and thoughts of the child concerning the custody proceeding about to take place. [¶] (2) The feelings and thoughts of the child about the child's parent or parents. [¶] (3) The child's preference as to custody, according to Section 3042. [¶] (b) The court shall inform the child of the child's right to attend the hearing. However, counsel for the child may waive the hearing in chambers by the court. [¶] (c) This section does not apply if the child is confined because of illness or other incapacity to an institution or residence and is therefore unable to attend." (Italics added.) The court's duty under section 7891 is sua sponte. (See *In re Jack H.* (1980) 106 Cal.App.3d 257, 262, 269 [16 Cal.Rptr. 646] (*Jack H.*)

In the matter before us, the oldest child was 10 years old at the time of trial. The court did not discuss with him the matters set forth in section 7891, and we cannot say this error was harmless. The record contains no indication what the minor would have said, other than what is contained in the evaluator's report. Although the report noted that the oldest child was happy, was attached to his mother, and had a good relationship with his brother and stepfather, it also stated that, although initially hesitant, he was open to visitation with Hector if another adult was present. The evaluator's report, therefore, contained at least some relevant information the court might have learned and explored, which could have been helpful to Hector's case. Furthermore, all of the other topics mandated by section 7891 would have given the trial court insight into the best interests of the children. The failure to conduct the interview was prejudicial error.

### 3. *Appointment of Counsel to Represent the Children (§ 7861)*

Section 7861 reads as follows: "The court shall consider whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel . . . ." The trial court did not appoint counsel to represent the children, and the record does not indicate the court even considered the matter.

 As Irina points out, in proceedings to free a child from parental custody and control, typically each side asserts it is protecting the best interests of the child and, in the process, the court becomes fully advised of matters affecting the child's best interests. (*In re Richard E.* (1978) 21 Cal.3d 349, 354 [146 Cal.Rptr. 604, 579 P.2d 495] (*Richard E.*).) Accordingly, our Supreme Court has ruled that counsel need be appointed for the children only if the trial court, in its discretion, determines that their interests are not

satisfactorily represented during the adjudication of the other issues. (*Ibid.*) Where there has been no showing one way or the other, however, the court's failure to appoint counsel is deemed *erroneous*. As our Supreme Court summarized: "Thus, in absence of a showing on the issue of the need for independent counsel for a minor, failure to appoint constitutes error." (*Ibid.*)

Because the record fails to demonstrate whether there was a need to appoint independent counsel, we must conclude the failure to appoint counsel was error. (*Richard E., supra,* 21 Cal.3d at p. 354; see *Jack H., supra,* 106 Cal.App.3d at p. 270 ["counsel must be appointed at the commencement of proceedings on retrial unless there is 'an immediate showing upon which the court can exercise its discretion against making an appointment' "].)

Furthermore, while the ultimate decision whether to appoint counsel is certainly in the lower court's discretion, section 7861 makes clear that the court has a *non*discretionary duty to at least *consider* the appointment. (See § 7861 ["court *shall* consider whether the interests of the child require the appointment of counsel" (italics added)].) Based on the record before us, the trial court did not undertake this consideration.

### 4. *Conclusion*

In sum, the trial court failed to consider the evaluator's report concerning the best interests of the children, failed to interview the oldest child, and failed to consider whether the children should be appointed independent counsel. Because the paramount concern in a proceeding to declare the children free from parental custody and control is the children's best interests, the trial court's errors compel us to vacate the judgment.

Upon remand, the trial court shall first determine whether it should have appointed independent counsel for the minors. If, in its judgment, the appointment of counsel was unnecessary because the children's interests at trial were satisfactorily represented, the court need not retry the matter. Rather, the trial court shall then consider the evaluator's report and interview the parties' oldest minor child, and render its decision in light of the existing trial record. If, on the other hand, the trial court determines that the children should have been appointed independent counsel, retrial is necessary.

Lastly, Hector asks us to order that further proceedings be held before a judge other than Judge Dylina, who presided over the trial, pursuant to Code of Civil Procedure section 170.1, subdivision (c). Hector has not established that the interests of justice so require.

## III. *DISPOSITION*

The judgment and order denying a new trial are vacated, and the matter is remanded for further proceedings consistent with this opinion. Each party to bear its own costs on appeal.

Simons, J., and Gemello, J., concurred.