Filed 4/29/14  Adoption of I.A. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Adoption of I.A., a Minor. | |
| F.P. et al., | |
| Plaintiffs and Respondents, | G048933 |
| v. | (Super. Ct. No. AD78979) |
| I.A. III, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Ronald P. Kreber, Judge.  Affirmed.

Diana W. Prince, under appointment by the Court of Appeal, for Defendant and Appellant.

Jarvis, Krieger & Sullivan, Carolyn Martin and Siobhan M. Bishop for Plaintiffs and Respondents.

*            *            *

Appellant, the biological father, challenges the judgment terminating his parental rights to free I.A. for adoption by his stepfather, F.P. The superior court terminated parental rights. Finding no error, we affirm.

I

FACTS

*The Petitions*

N.P. (the mother) of I.A., who was born in 2007, and her spouse brought a petition to declare minor free from parental custody and control. The petition was filed on September 4, 2012, and states the mother had full custody and control of I.A. since April 2008.

Probate court services prepared an adoption report which was filed on November 1, 2012. The report states the biological father (appellant) "does not consent to his son being adopted by the [stepfather]." The evaluator states in the report: "In conclusion, . . . this investigator is of the opinion it would not be in the minor's best interest to approve a stepparent adoption at this time. As presented above, this five and half year old boy did not appear of sufficient age and capacity to reason to understand and express an intelligent preference regarding this adoption, and currently seems confused by the parental conflict associated with the past Family Law and the current Probate cases. Furthermore, it does not appear the father's recent lapse of contact constitutes parental abandonment. The father denied any intention to abandon his son, and expressed his plans to re-establish visitation with him. The father also expressed a willingness to continue to financially support his son in the future, once he re-establishes employment."

A petition to determine parental rights was filed on July 18, 2012. That petition states in part: "The court had previously ordered no visitation to [appellant] as of 10/26/11. [Appellant] has a long history of domestic violence and drug abuse. I do not

2

receive child support, nor do I want it if it means that I can be assured my son will always be safe."

*The Hearing*

On June 28, 2013, the trial court conducted a hearing. Appellant, who was incarcerated at the time for receiving stolen property, testified that over 13 years earlier, he was convicted of a felony, robbery. He admitted he did not provide any form of support to I.A. since January 2012, and that the last time he saw the child was in October 2011.

In July 2011, appellant sent I.A. some shoes and a letter. He said he made one attempt to contact the boy during 2012, but a few questions later he said he telephoned about once a month and usually got voicemail. He admitted he did not finish his anger management classes. He explained: "I lost my job and was not able to pay the $35 weekly fee . . . required." He said he did not want his son adopted because he loves him and wants to be part of his life.

The mother testified appellant paid child support until January 2012. She was asked when was the last communication between appellant and I.A., and she said that sometime during 2012, "he sent him a pair of shoes, I think." But she added appellant sent I.A. a birthday card this year "I think." Appellant also telephoned I.A. once, in August or September, after the mother contacted appellant's mother regarding her pursuit of the termination of appellant's parental rights. The mother explained why she did not permit him to speak with I.A.: "I asked him to call in one week to show me consistency." There were no further attempts by appellant to contact I.A. after that. I.A. did go to his paternal grandmother's home twice in the previous six months.

Stepfather testified he provides financial, emotional and psychological support for I.A. He plays outside with I.A. and attends his sporting events on the weekends.

During argument, appellant's counsel argued appellant was incarcerated in November. Counsel stated: "He cannot visit. He cannot provide support. It doesn't mean that he intended not to provide."

The trial court noted that appellant testified that he had no stable residence. The court seemed concerned that appellant did not keep in contact with the child, stating: "Even in-custody, he could do it by letter on a daily basis if he really thought it was important. [¶] . . . [¶] . . . I don't think the child can wait for the father to meet his burden. . . . [¶] I think the ability to seeing the child has only been token attempts . . . ." The court further commented that appellant "had many chances to complete his programs and has failed to do so," and that he "could have gone back to court to get visits and that has not been done." The court also stated: ". . . I think that the son has to be in a stable environment and the situation that the son is in at this time is very important due to the child's age."

*The Ruling*

On June 28, 2013, the trial court determined I.A. was "left by his father, [appellant], without communication in excess of one year. He has not communicated with the child except for token attempts to communicate. [¶] No support was paid by father for the child in excess of one year. [¶] There was an intent to abandon. [¶] The child is hereby described by Family Code § 7822. [¶] The best interest of [I.A.] requires that parental rights of [appellant] be terminated with respect to [I.A.]. [¶] By clear and convincing evidence the petition is granted."

II

DISCUSSION

Appellant argues on appeal: "The juvenile court erred when it held father abandoned [I.A.] because father visited [I.A.] and paid child support less than a year before the petition was filed, and he made more than token attempts to remain in contact

4

with [I.A.] during the year prior to the filing of the petition by sending a birthday card, and gift, and making numerous telephone calls." Appellant requests this court to reverse the order terminating his parental rights and freeing I.A. for adoption by his stepfather. He further states in his briefing: "Despite being homeless and later in prison, Father at a minimum sent a card to [I.A.], wrote him a letter, sent him a pair of shoes, and called and asked to speak to him between January 2012 and the filing of the petition in September 2012."

Family Code section 7800 et seq. governs proceedings to have a child declared free from a parent's custody and control. The purpose of such proceedings is to promote the child's best interest "by providing the stability and security of an adoptive home." (§ 7800.) The statute is to "be liberally construed to serve and protect the interests and welfare of the child." (§ 7801.) (All statutory references are to the Family Code.)

Section 7822 provides that a proceeding may be brought "if any of the following occur: [¶] (3) One parent has left the child in the care and custody of the other parent for a period of one year without any provision for the child's support, or without communication from the parent, with the intent on the part of the parent to abandon the child." (§ 7822, subd. (a)(3).)

An appellate court applies a substantial evidence standard of review to a trial court's findings under section 7822. (*In re Amy A.* (2005) 132 Cal.App.4th 63, 67.) Although a trial court must make such findings based on clear and convincing evidence (§ 7821), this standard of proof "'is for the guidance of the trial court only; on review, our function is limited to a determination whether substantial evidence exists to support the conclusions reached by the trial court in utilizing the appropriate standard.' [Citation.]" (*In re B. J. B.* (1986) 185 Cal.App.3d 1201, 1211.)

"Statutes authorizing an action to free a child from parental custody and control are intended foremost to protect the child. [Citation.] Typically, such statutes are

invoked for the purpose of terminating the rights of one or more biological parent, so the child may be adopted into a stable home environment.  (See § 7800  ['The purpose of this part is to serve the welfare and best interest of a child by providing the stability and security of an adoptive home when those conditions are otherwise missing from the child's life.']; [citation].)  In any event, the best interests of the child are paramount in interpreting and implementing the statutory scheme.  [Citation.]  Indeed, our Legislature has declared that the statutory scheme 'shall be liberally construed to serve and protect the interests and welfare of the child.'  (§ 7801.)  It further directs that the trial court '*shall* consider the wishes of the child, bearing in mind the age of the child, and *shall* act in the best interest of the child.'  (§ 7890, italics added.)"  (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 162-163.)

Here the trial court carefully considered the substantial evidence submitted and thoroughly analyzed what was in the best interests of I.A.  Under the circumstances we find in this record, we conclude substantial evidence supports the court's findings and that there is no indication the court erred.

### III

### DISPOSITION

The judgment is affirmed.

MOORE, J.

WE CONCUR:

O'LEARY, P. J.

IKOLA, J.

6