Filed 6/18/24 Adoption of H.M. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| Adoption of H.M., a Minor. | 2d Civ. No. B332831 (Super. Ct. No. T000177) (Ventura County) |
| A.F. et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>J.M.,<br><br>    Defendant and Appellant. | |

Guardians of a minor child petitioned the trial court to have the child declared free from the custody and control of his parents pursuant to Family Code section 7822 and Probate Code section 1516.5, so the guardians can adopt the child.  After a contested hearing, the court granted the petition.

The child's mother appeals on the grounds that a proper inquiry into the child's potential Indian ancestry was not

completed, and no counsel was appointed for the child. We affirm in part and reverse in part. We conditionally reverse and remand for the department to conduct a proper Indian Child Welfare Act (ICWA) inquiry. In all other aspects, we affirm.

FACTS

H.M. was born in December 2018, as a result of a brief sexual encounter between J.M. (Mother) and G.L. (Father). Mother and Father never married or cohabitated. Father was initially unaware of H.M.'s birth.[1]

Mother struggles with her mental health and was unable to care for H.M. Mother requested help from A.F. and N.F., her aunt and uncle (Petitioners). When H.M. was six weeks old, he began sleeping at Petitioners house. On November 26, 2019, Mother placed H.M. in Petitioners' care. H.M. has resided with Petitioners since.

On December 17, 2019, Mother signed an affidavit giving Petitioners temporary guardianship over H.M. until December 15, 2020. Mother visited H.M. fairly often.

In March 2020, the Petitioners' household was stricken with COVID-19. H.M. went to live with Mother while Petitioners' family quarantined. On April 4, 2020, however, the sheriff and child protective services removed H.M. from Mother and returned him to Petitioners because Mother had threatened to kill herself and H.M. Petitioners obtained emergency temporary guardianship of H.M. on April 17, 2020. Thereafter Petitioners obtained permanent guardianship over H.M. Mother

---

[1] In January 2021, Mother told Father of H.M.'s birth and that he is the father. Father has had no contact with H.M. and has provided no support for him. Father does not appeal the trial court's order.

2

was granted supervised visitation. Mother subsequently moved to Northern California in November 2020.

Between January and July 2021, Mother had only FaceTime visits with H.M., monitored by a third party. Mother's last contact with H.M. occurred on July 20, 2021. Both Mother's aunt and the third party monitor testified they received no request from Mother for a visit since that date.

Mother has provided no support for H.M., despite having worked for several months, receiving unemployment benefits and receiving financial support from her current boyfriend since November 2021.

H.M. calls Petitioners mom and dad and views their children as his siblings. They are the only family he knows, and their home is the only home he knows.

In April 2022, Petitioners petitioned the trial court to declare H.M. free from parental custody and control. The court granted the petition in September 2023, finding H.M. had been in Petitioner's custody for at least two years; Mother last visited H.M. on July 21, 2021; Mother has not communicated with H.M. since and has completely failed to provide support for H.M.; Mother acted with the intent to abandon H.M.; and it is in H.M.'s best interest to be adopted by Petitioners.

## DISCUSSION

### I. Statutory Foundation

Family Code section 7822, subdivision (a) provides in part: "A proceeding [to declare a child free from the custody and control of one or both parents] under this part may be brought if any of the following occur: [¶] . . . [¶] (2) The child has been left by both parents or the sole parent in the care and custody of another person for a period of six months without any provision for the

3

child's support, or without communication from the parent or parents, with the intent on the part of the parent or parents to abandon the child."

Family Code section 7822, subdivision (b) provides in part, "[F]ailure to provide identification, failure to provide support, or failure to communicate is presumptive evidence of the intent to abandon."

Probate Code section 1516.5, subdivision (a) provides in part:

"A proceeding to have a child declared free from the custody and control of one or both parents may be brought . . . if all of the following requirements are satisfied:

"(1) One or both parents do not have the legal custody of the child.

"(2) The child has been in the physical custody of the guardian for a period of not less than two years.

"(3) The court finds that the child would benefit from being adopted by his or her guardian. In making this determination, the court shall consider all factors relating to the best interest of the child, including, but not limited to, the nature and extent of the relationship between all of the following:

"(A) The child and the birth parent.

"(B) The child and the guardian, including family members of the guardian.

"(C) The child and any siblings or half siblings."

*II. Appointment of Counsel for H.M.*

Mother contends the trial court erred in failing to at least consider the appointment of counsel for H.M.

Family Code section 7861 provides: "The court shall consider whether the interests of the child require the

4

appointment of counsel.  If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel.  The child shall not be present in court unless the child so requests or the court so orders."

Although the ultimate decision whether to appoint counsel is in the trial court's discretion, Family Code section 7861 is clear that the court's duty to consider appointment of counsel is mandatory.  (*Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 171.)  Here no party requested the court to appoint counsel for H.M.  Assuming the court has a sua sponte duty to consider the appointment of counsel, any error is harmless.

This is not a close case.  H.M. has been living with Petitioners since he was less than one year old.  He calls Petitioners mom and dad and views their children as his siblings.  Petitioners' home is the only home H.M. has ever known.  H.M. was four and one-half years old at the time of the hearing.  Mother has not contacted him in at least two years.  If he had any memory of Mother at all, it would be vague at best.  Mother has threatened to kill herself and H.M.  The social worker involved testified to the benefit of adoption.  Mother points to no evidence that she has taken steps toward resolving her mental health problems.

Petitioners offer H.M. a loving and stable home through adoption.  Freeing H.M. from parental custody and control so that he can be adopted by Petitioners was the only reasonable conclusion in this case.

Moreover, both Petitioners and parents presumably had H.M.'s best interest at heart.  They were represented by counsel, and the trial court was fully advised of all matters affecting

H.M.'s best interests.  The only assistance Mother suggests counsel could provide to H.M. is assistance in stating H.M.'s preference.  But at four and one-half years old, H.M.'s preferences would have no weight.  He is simply too young to have any concept of the consequences of his choice.  (See Fam. Code, § 7891, subd. (a) [court must ask preferences of child 10 years of age or older].)  That is particularly true in this case where the overwhelming evidence makes adoption the only reasonable result.

### *III. ICWA*

Mother contends the trial court's inquiry pursuant to the ICWA (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) was inadequate.

ICWA applies to child custody proceedings including termination of parental rights and adoptive placement of an Indian Child.  (25 U.S.C. § 1903, subd. (1)(ii), (iv).)  At issue here is the scope of the inquiry necessary to determine whether a child subject to child custody proceedings is an "Indian Child."  An "Indian Child" is defined as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903, subd. (4).)

Petitioners, Mother, and Father filed ICWA-020 forms stating that neither they nor H.M. had any Indian ancestry.  The Ventura County Human Services Agency did not conduct an ICWA inquiry.  Based on the forms filed by Petitioners, Mother, and Father, the trial court found ICWA did not apply.

At trial Father's counsel stated that Father's family was present in court without specifying what members of the family

were present.  Father's sister was also present in court on one day of the trial.  The court made no ICWA inquiry of Father's extended family.

Mother cites *In re Y.W.* (2021) 70 Cal.App.5th 542, 552-553, for the proposition that meaningful efforts must be made to locate and interview the child's extended family members.  But *In re Y.W.* is based on Welfare and Institutions Code section 224.2, subdivision (b): "If a child is placed into the temporary custody of a county welfare department pursuant to [Welfare and Institutions Code section] 306 or county probation department pursuant to [Welfare and Institutions Code section] 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child.  Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."

Welfare and Institutions Code section 224.2, subdivision (b) does not apply to this case.  H.M. was not placed into the custody of the county welfare or probation departments pursuant to Welfare and Institutions Code sections 306 or 307.

There is disagreement among the Courts of Appeal on the application of the harmless error rule to the failure to make an adequate investigation under ICWA.  (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777-779, review granted Sept. 21, 2022, S275578, for discussion of the various views.)  The question is now before our Supreme Court.  (*Ibid*.)  We believe the best statement of the rule is in *In re Dezi C*.:  "[A]n agency's failure to

7

conduct a proper initial inquiry into a dependent child's American Indian heritage is harmless unless the record contains information suggesting a reason to believe that the child may be an 'Indian child' within the meaning of ICWA, such that the absence of further inquiry was prejudicial to the juvenile court's ICWA finding." (*In re Dezi C.*, *supra*, at p. 779.)

Here both Mother and Father, and Petitioners, filed form ICWA-020 attesting that H.M. has no Indian ancestry. Mother points to no document or other evidence in the record that suggests otherwise. Nevertheless, because of the uncertainty in the present state of the law, we think it best to bring this matter to a prompt conclusion.

DISPOSITION

The judgment is conditionally reversed and remanded for the limited purpose of complying with ICWA requirements. (See *In re M.R.* (2022) 84 Cal.App.5th 537; Fam. Code, § 7822; Prob. Code, § 1516.5.) If H.M. is found to have no Indian ancestry, the judgment shall be reinstated. In all other respects, we affirm.

NOT TO BE PUBLISHED.


GILBERT, P. J.


I concur:



BALTODANO, J.

YEGAN, J., Dissenting:

I respectfully dissent.  Rather than infuse new life and uncertainty in this adoption case, we should mercifully put an end to this litigation.  With certainty, I opine that there is no miscarriage of justice here.  (*In re J.K.* (2022) 83 Cal.App.5th 498 (dis. opn. of Yegan, J.).)  We should not allow slavish adherence to ritualistic form to defeat justice for the actual parties and for the minor.  On remand, there is not even a chance that the superior court will remove the child from the only home he has ever known.  The minor's rights are paramount.  This five-year-old boy should continue to live with the only "parents" he has ever known.

NOT TO BE PUBLISHED.


YEGAN, J.

Ferdinand Inumerable, Judge

Superior Court County of Ventura

_____

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

Taylor, McCord, Praver & Cherry, Patrick G. Cherry; Hartley Lamas and Carla L. Hartley for Plaintiff and Respondent.