Filed 4/9/26  Adoption of A.M. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# SECOND APPELLATE DISTRICT

# DIVISION FIVE

| | |
|---|---|
| Adoption of A.M., a Minor. | B349060 |
| N.M. et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>M.V.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. 25CCAD00318) |

APPEAL from an order of the Superior Court of Los Angeles County, Nichelle L. Blackwell, Commissioner.  Affirmed.

Leslie A. Barry, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearances for Plaintiffs and Respondents.

\* \* \* \* \* \*

A mother whose parental rights were terminated claims that her fundamental right to due process was violated because the trial court did not re-do the hearing after the mother called in 25 minutes late, by which point in time the court had already conducted the hearing and orally issued its findings. We conclude the mother was afforded the *opportunity* to be heard; her failure to *take* that opportunity is not a basis for reversal. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

Mariah V. (mother) gave birth to Amari M. in September 2021. At the time of his birth, Amari had methamphetamine in his system, and "struggle[d] with drug withdraw[al] issues."

Dana M. and Niki M., respectively, are Amari's paternal grandfather and his wife (the grandparents). They took custody of Amari when he was five weeks old. They became his legal guardians on April 21, 2022.

On February 20, 2025, the grandparents applied to adopt Amari.

Because mother opposed adoption the grandparents on May 19, 2025, petitioned to have Amari declared free from parental custody and control. The petition alleged that Amari had been left in the grandparent's custody for more than two years "without any provision for support, and without communication from" mother "with the intent . . . to abandon" him, thereby

2

empowering the trial court to grant the petition pursuant to Family Code section 7822, subdivision (a)(2) and Probate Code section 1516.5.

On May 21, 2025, the trial court issued a "Citation Freedom from Parental Custody and Control (Abandonment) (Re: Adoption)" to mother. The citation stated that mother was "hereby cited" and "may appear before" "Department 622" of the Children's Court on July 21, 2025 at 11:00 am "to show cause . . . why [Amari] should not be declared free from the control of his[] parents according to the petition on file herein." The citation also "notified" mother that, "if [parents] are unable to afford counsel," "[t]he [c]ourt" "shall appoint counsel to represent" them.

Mother was personally served with the citation on June 2, 2025.

On July 21, 2025, the trial court—in Department 622 of the Children's Court—convened the hearing on the petition to have Amari declared free from parental custody a little after 11:00 a.m. The grandparent's counsel appeared remotely. The trial court instructed the bailiff to call out mother's name in the courtroom and "in the lobby"; mother was not present. The court placed the bailiff under oath, and the bailiff testified that mother was not present at 11:10 a.m. The court then entered mother's default and proceeded with the hearing by swearing in the grandparents; their ensuing testimony substantiated the petition's allegations. The court orally issued findings (1) by "clear and convincing evidence . . . that the allegations" in the petition supporting the termination of mother's parental rights under Family Code section 7822 and Probate Code section 1516.5 were "true" because mother has "abandoned" Amari; (2) that Amari has "lived" with and "been in [the] care" of the

3

grandparents, "virtually, since birth"; and (3) that "it's in [Amari's] best interest to be adopted by [the grandparents]." The court then "terminate[d] the parental rights" of mother.

At that time, the court was informed that mother had "just called into court." The court placed mother on "speaker phone," explained that the court had "entered [her] default because [she] failed to appear at 11:00 a.m.," that the court had "made findings, on the record, that [she] abandoned the child," and that the court had "terminat[ed mother's] parental rights." When mother responded that she was "literally down the street," the court pointed out that she had "failed to show up" and advised mother of her appellate rights.

Mother filed a timely appeal from the July 21, 2025 order terminating her parental rights.

## DISCUSSION

Mother frankly acknowledges that it "appears that she may well have abandoned" her son and that it "may well be in [his] best interests to be adopted by" his grandparents, but asserts that her right to due process was violated due to alleged defects in the citation and due to the trial court's refusal to conduct the termination-of-rights hearing anew when mother called in after it ended.

## I. Termination of Parental Rights, Generally

A child may be adopted over a natural parent's objection only if that parent's parental rights are terminated, which requires proof that (1) the child has been "abandoned" by the parent and (2) termination of that parent's rights is in the best interest of the child. (Fam. Code, § 7822, subd. (a)(2); Prob. Code, § 1516.5, subd. (a); *Adoption of Hinman* (1971) 17 Cal.App.3d 211, 215.) To establish abandonment when a child is left in the

4

custody of his legal guardians, the court must find by clear and convincing evidence that the child has been in the physical custody of the guardian "for a period of not less than two years" "without any provision for the child's support" or "without communication" and "with the intent . . . to abandon the child." (Fam. Code, § 7822, subd. (a)(2); Prob. Code, § 1516.5, subd. (a)(2); *Neumann v. Melgar* (2004) 121 Cal.App.4th 152, 163 (*Neumann*).)  The Family Code erects several procedures to protect the parents whose rights are at stake:  The court must issue a "citation" advising the parent of the "time and place" of the hearing (Fam. Code, § 7880, subd. (a)), the citation must advise the parent of the right to have counsel appointed if the parent cannot afford it (*id.*, §§ 7881, subd. (b), 7862) as well as that the petition "is filed for the purpose of freeing the child for placement for adoption" (*id.*, § 7881, subd. (b)), and the citation may be served by many methods of service of process (*id.*, § 7881, subd. (c)).

## II.    Procedural Due Process

Because a parent's interest "in the companionship, care, custody, and management of [her] children" is "among the most basic of civil rights," the constitutional principle of procedural due process requires that a parent whose rights may be terminated be given "adequate notice and an opportunity to be heard."  (*In re B.G.* (1974) 11 Cal.3d 679, 688-689; *In re Robert J.* (1982) 129 Cal.App.3d 894, 900.)  We review de novo whether a parent's due process rights have been violated.  (*In re J.H.* (2007) 158 Cal.App.4th 174, 183 [constitutional issues reviewed de novo].)

5

## A. *Notice*

Mother received notice of the termination hearing that accorded with due process. She was personally served with the citation seven weeks before the hearing, and the notice advised her that (1) a petition had been filed to declare Amari "free from the control of his[] parents," (2) the petition "re[garded] adoption," (3) the petition would be heard on July 21, 2025 at 11:00 a.m., and (4) mother had the right to have counsel appointed if she could not afford it. This suffices.

Mother raises three arguments in response. First, she contends that the citation did not advise her of her right to the appointment of counsel. The plain text of the citation explicitly refutes this contention. Second, she asserts that the notice was defective because the hearing was taking place remotely via Microsoft Teams and the citation did not give her instructions on how to appear remotely. This assertion ignores that the court conducted an in-person hearing at the time and place designated in the citation. Although the minute order erroneously stated that the "Hearing [was] by Microsoft Teams," and although the Notice of Hearing issued to the grandparents provided Webex instructions, the notice served on mother stated the correct time and place for the in-person hearing that occurred. Third, she argues that the citation did not advise her that Amari's adoption was at issue. Although Family Code section 7881 provides that a "citation shall" "state" "[i]f [a] petition is filed for the purpose of freeing the child for placement for adoption" (Fam. Code, § 7881, subd. (b)), and although no one checked the box on the citation that provided that "[t]he petition filed here is for the purpose of freeing the subject child for placement for adoption," the citation form's title indicated it was "re[garding] adoption" and it is

6

undisputed that mother was advised that the petition was filed as part of the grandparents' adoption proceedings.

### B. *Opportunity to be heard*

Mother also received the opportunity to be heard that due process secures. The hearing was conducted at the time and place designated in the citation. At that time and place, the trial court had the bailiff call out mother's name and mother was not present. In such situations, both the Family Code and due process permit the trial court to proceed in the parent's absence. (Fam. Code, § 7870, subd. (b) ["[i]f, at the time set for hearing, . . . service has been completed and no interested person appears to contest, the court may issue an order based on the verified pleadings and any other evidence as may be submitted"]; *In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131 ["When a parent is absent without good cause at a properly noticed hearing, the court is entitled to proceed in the parent's absence"]; *In re Clarissa H.* (2003) 105 Cal.App.4th 120, 122-124 [same]; *In re Angela R.* (1989) 212 Cal.App.3d 257, 275-276.) And because, in this situation, the parent has not "appear[ed]," the court is not obligated to appoint counsel in the parent's absence. (Fam. Code, § 7862; *In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1162.) This outcome dovetails neatly with the framework of procedural due process, which is a "flexible" standard that balances the "private interest that will be affected" against the government's competing interests as well as the "risk of an erroneous deprivation" of rights. (*In re Malinda S.* (1990) 51 Cal.3d 368, 383.) A person's parental rights are undeniably weighty, but the "public policy of expediency and finality" is "unusually strong in custody and adoption matters, as uncertainty is detrimental to a child's development and well-being" (*In re Clarissa H.*, at p. 125),

7

and mother has effectively conceded on appeal that the trial court's ruling was not erroneous on its merits.  More the point, due process secures the *opportunity* to be heard; a parent who elects not to show up at the time and place designated for a hearing was not denied that opportunity—they simply chose not to take it.[1]

Mother resists this conclusion.  She argues that an order terminating parental rights only becomes immune from modification upon its entry as a *judgment*, such that a parent's appearance at any time before entry of judgment entitles that parent to a new hearing.  To be sure, Family Code section 7894 provides that a "court has no power to set aside, change, or modify" an "order and judgment" "free[ing]" a child "from the custody and control of a parent" after it is "ma[de]."  (Fam. Code, § 7894, subds. (a) & (c).)  But this language has not been construed to divest courts of their power to revisit those judgments.  (*Neumann*, *supra*, 121 Cal.App.4th at pp. 165-166.)  More importantly, whether a trial court has the power to modify its orders and judgments does not mean that a litigant who did not appear at the hearing has a due process right to a new hearing as long as they call in at some point prior to the time when the trial court *loses* the power to modify.  To the contrary, trial courts generally have *discretion* whether to reopen proceedings (*Guardianship of Phillip B.* (1983) 139 Cal.App.3d 407, 428-429); mother's argument, if accepted, would obliterate that discretion and obligate that it always be exercised in favor of a new hearing.  Mother cites *In re Markaus V.* (1989) 211 Cal.App.3d 1331, but that case deals with calculating the time for

---

[1]     The record contains no justification or excuse for mother's non-appearance at the designated time and place.

8

filing a notice of appeal; it is irrelevant.  Mother has also not offered any argument as to why the trial court erred in exercising its discretion not to reopen the hearing; nor would we find such an abuse, as the trial court had fully completed the hearing by hearing all the evidence and making all of the necessary findings, mother was not physically present in the courthouse, and mother proffered no explanation for her failure to appear on time.

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR

9